[Civ. No. 7494. First Appellate District, Division Two.—October 27, 1930.]

FILOMENA MANGINO et al., Respondents, v. JAKE BONSLETT, Appellant.

J. Hampton Hoge and A. Dal Thomson for Appellant.

James M. Wallace, Lovell & Lovell & Wallace and Wade W. Moore for Respondents.

PRESTON (H. L.), J., *pro tem.*—This is an appeal from an order granting a new trial, after a verdict of a jury in favor of defendant. The action is one for damages for personal injuries resulting from an automobile accident.

The order granting the new trial reads in part as follows: "The motion for a new trial in behalf of plaintiffs in the above-entitled case, coming on regularly to be heard, and said motion having been submitted to the court for decision, and the court having very carefully considered the points urged by counsel, and having a clear recollection of the conduct of the trial, now orders that said motion be, and the same is, hereby granted. On the question of the sufficiency of the evidence, the court finds that the evidence was sufficient to warrant a verdict in favor of either party."

The insufficiency of the evidence cannot be urged in support of the order, because it is not specified in the order as one of the grounds therefor. (Sec. 657, Code Civ. Proc.; *Murphy* v. *Zwieg*, 100 Cal. App. 266 [279 Pac. 1062].) The sole question is whether the trial court abused its discretion in granting plaintiffs' motion for a new trial.

Plaintiffs predicated their motion for a new trial upon practically all of the grounds enumerated in section 657 of the Code of Civil Procedure, but urged as the main specification of error the alleged prejudicial misconduct upon the part of counsel for defendant.

The plaintiffs were riding in an automobile borrowed from one H. H. Summers, who was not a party to this action, but he had already sued the defendant Bonslett in another action for damages to his automobile. A Mr. Boysen, an insurance broker representing Summers, interviewed the defendant Bonslett the day after the accident. A Mr. Schmitt assisted the plaintiffs' counsel in preparing this case for trial, was not called as a witness, but was mentioned by the witness Anderson as the man who obtained his signature to an affidavit. Anderson was asked upon cross-examination as to what Schmitt's business was and replied, "One of them is insurance and the other is law, I believe."

█ It is readily apparent from an examination of the record, that counsel for defendant, throughout the entire trial and during his closing argument, attempted to convey to the jury the idea that an insurance company was the real party in interest behind the plaintiffs' case. The record in this case is replete with improper statements and prejudicial remarks on the part of counsel for defendant in his closing argument. The following excerpts from the record will be sufficient to illustrate the nature of the remarks and objections of counsel, and admonitions of the court with reference thereto, to wit:

"Mr. Hoey (counsel for defendant): Now if the Glens Falls Insurance Company was obliged to pay Mr. Summers for damage to his car, why didn't they go and pay it? Why should they have their agent going around and trying to collect their damages from somebody else? But he says he remembered when they had the suit for the property damage. Of course he did. He was an interested party as an agent there. He wanted his insurance company to get the money that they had to pay to Summers as a result of this accident. . . . Now the insurance man from San Francisco (meaning Schmitt), he is the man that is handling the case. He is the man that is going to make old Jake Bonslett pay. He is the man who talks it over with these people and he is the man who talked it over with the family and he is the one who is handling this situation. We have also as part of this case to say that perhaps people were influenced by him. . . . *This case was submitted to a jury one time before and the jury brought in a verdict in favor of the defendant.* Mr. Wallace (counsel for plaintiffs): If the Court please, we will object to that statement of counsel. The Court: "Now, Mr. Hoey, that is misconduct on your part and the jury will disregard any remarks made by counsel as to the former trial of this case. Mr. Wallace: We would like, for the sake of the record, to assign it as prejudicial error, Your Honor, and ask Miss Raffetto (the reporter) to note that. The Court: The court will admonish the jury to entirely disregard that remark. Mr. Hoey: Do I understand that I can't comment on any of the papers in the case? The Court: You can't comment upon what the action of the jury did in this case before. If you were to be allowed to do that then the other side would be allowed to say

that the Judge granted a new trial. Mr. Hoey: Well, I expected to say that and— The Court: Well, there should be no reference at all to the disposition of the case at the former trial. . . . Mr. Hoey: I always understood that the papers were evidence in the case. The Court: Well, what papers? Mr. Hoey: Well, the papers were—the affidavits that were filed by the people to have the court grant a new trial. The Court: Well, they have nothing to do with the case. They were not introduced in evidence. Mr. Hoey: Well, one of them was referred to. The Court: All cases should be disposed of on the basis of the evidence before the court and arguments should be confined to that. . . . Mr. Hoey (continuing with his argument): There is evidence before the court that in the matter of granting a new trial one of the grounds is newly discovered evidence. . . . *It seems to me that Mr. Schmitt, the insurance man from San Francisco, with all his ability and all of his years of experience would have gone up to that garage the first time and had a conversation with this boy, or somebody else. . . .* That dent, in my judgment, was put in there with a sledge hammer and not with a bumper of an automobile. . . . *Now, ladies and gentlemen of the jury, why was this jury asked— why were you asked, ladies and gentlemen of the jury, if you were a policy holder and a stockholder in some—I don't remember the name of the Company—Zurich Insurance Company? Why were you asked that question if it wasn't intended that that company or some other company was to be injected in this case. Why were you asked if you were a member of the California Automobile Association? I will tell you why; The California Automobile Association writes insurance. Mr. Sturm, I think, is the only man on this jury that belongs to that organization. They want to leave the impression with you that Jake Bonslett has an insurance company behind him and that if you render a verdict that the insurance company will pay it and not Jake Bonslett. The insurance man behind this case is Mr. Schmitt, the man who is peddling around, and Mr. Boysen, the man who never appeared before you. He is the insurance man, Mr. Schmitt is the insurance man involved in this case. This case occurred on December 21, 1928. There was no damage suit until June 3, 1929, a long time after it occurred and sufficient time elapsed to permit these plaintiffs, with their insurance*

*director there, and not one but two people who were not new at the game, who have been sued themselves, who knew how to collect evidence, who had the evidence concealed in their own brain, so they tell you now—they didn't tell you before. Know just what to do, but they didn't file a complaint until June 23, 1929, and you decide just what is behind this case; Whether or not it is Mr. Bonslett or another insurance ompany, and you determine in your own mind how much Mrs. Mangino is going to get out of it. Why these people are particularly interested in it. The question was asked you and you make that charge now and if it isn't true. . . . The question was asked you if you were interested in an insurance company.* Mr. Bonslett is well able to pay whatever judgment perhaps would be rendered against him in a fair case. He doesn't want to deny any liability. I don't know how about his financial condition and I don't believe the neighbors are bringing in coal and potatoes to keep in him in comfort, and I don't believe it is fair for counsel to try to leave an impression with this jury that Jake Bonslett or somebody else is insured and the insurance company will pay the bill. *The insurance company on the other side of the case are the ones that are trying to gouge Jake Bonslett in this case. . . . Just how would you feel if you were brought in as a defendant in a personal injury suit and thereafter for reasons that perhaps you will not be informed of in the matter was retried and then during the interim when these witnesses—when there was plenty of time, ample time to get them and bring them in here, come in here and testify to things which are material in this case. . . .* Mr. Bonslett's automobile did not even touch the automobile of Mr. Mangino and that dent that you hear so much about did not appear in the left fender immediately after the accident, but it appeared perhaps at some later date. . . . Now just what is the damage? She (one of the plaintiffs) was a county patient for which the county ought to pay the bill if she hasn't the financial situation. . . . *Ladies and gentlemen of the jury, I want you to consider that Mr. Schmitt is the representative of the insurance company on the other side of the case and it is your duty to find out just how much Mr. Schmitt is going to get out of this case. . . .* Mr. Wallace: At this time, if your Honor please, I would like the record to show that we assign as misconduct Mr. Hoey's statement

to the jury referring to the insurance company on the other side of the case. There is no evidence in the record of any insurance company except what Mr. Boysen testified and that referred to Mr. Summers' insurance on Mr. Summers' automobile and we wish the record to show that that is assigned as misconduct. Mr. Hoey: Mr. Anderson testified he had a conversation with Mr. Schmitt and I asked him what Mr. Schmitt's business was and he said 'insurance and a lawyer'. . . . Mr. Wallace: The fact that he said Mr. Schmitt· was in the insurance business would in no way justify a reference to the insurance company on the other side of the case. Mr. Hoey: And Mr. Mangino testified that he was handling the case. The Court: Well, now, gentlemen, that is the misfortune of bringing things into a case that have no business there, and I would like to instruct the jury that you are to disregard this question of insurance, and that any question that is asked by counsel when it is not permitted by the court is not evidence. Furthermore, you are to decide this case on the evidence. There is no evidence before the court in this case that Dr. Merrithew and the county are not to be paid that hospital bill. As I understand it, the hospital is open to two classes of people. First, those who are dependent and claim to be indigents and ask for aid. To them it is free. To other citizens of the county who do not claim to be indigent and do not ask for public aid, they pay their bills the same as they would at any other hospital. Now proceed, Mr. Moore. Mr. Moore (one of plaintiffs' counsel) : I believe there is no question of insurance on either side here. The Court: Now you have asked that the court admonish the jury that insurance is not a question in this case. Now after that admonition ·you have no right to go into that. Mr. Moore: I was going to reply to Mr. Hoey. The Court: Mr. Hoey threw the field wide open but you didn't care to take advantage of that. Mr. Moore: Very well, I will abide by it, if your Honor please. Now Mr. Schmitt is not a lawyer. He is just a law clerk. Mr. Hoey: Just a second, we object to counsel misquoting the testimony. The testimony was he was a lawyer and an insurance man. Mr. Moore: Well, that was Mr. Anderson— Mr. Hoey: That is the only testimony in this action. The Court: *Well now, gentlemen, it has been a remarkable case; the extraneous matters that have entered into this case sur-*

*passes anything I ever heard or heard of. Now there is*
*no evidence that I can recall of before this court that Mr.*
*Schmitt is a lawyer.* Mr. Hocy: Yes, there is, may it please
the court, young Anderson testified—I asked him who Mr.
Schmitt was. He said 'a lawyer and an insurance man'.
Mr. Moore: He said he thought he was. He didn't know.
The Court: He thought he was wouldn't make him a lawyer.
Mr. Wallace: Perhaps he thinks I am an insurance man.
The Court: Well, proceed, but really try and confine our-
selves to the evidence. . . . "

These remarks were not warranted by any phase of the
testimony and could have had but one purpose—that is,
to prejudice the minds of the jury against the plaintiffs'
case and in favor of the defendant. There is no evidence
in the record that plaintiffs were insured or that an insur-
ance company was the real party in interest behind plain-
tiffs' case.

 Appellant insists that the repeated admonition of the
court to the jury to disregard the remarks of counsel cured
whatever prejudicial effect the remarks had upon the jury.
We cannot agree with this contention. We are satisfied that
the remarks were of such a character, and the purpose of
their injection into the case so apparent, that they could not
have been completely obliterated from the minds of the jury
by any admonition the court gave or could have given.

 The granting or denial of a new trial on the ground
of misconduct is largely in the discretion of the trial court.
"The trial court is in a much better position than an appel-
late court to determine whether the verdict in a case is
probably due wholly or in part to such alleged misconduct
as we have here, and his conclusion in the matter should not
be disturbed unless, under all the circumstances appearing,
it is plainly wrong." (*Lafargue* v. *United Railroads*, 183
Cal. 720–724 [192 Pac. 538, 540].) "The trial court having
heard and seen the witnesses on the trial, and having knowl-
edge as to those circumstances of a case which cannot be
reproduced in the printed record, is in a better position
than is the appellate court to determine as to the effect of
the shown irregularity upon the result of the trial. It is
certainly enough to justify the affirmance of an order grant-
ing a new trial upon such ground that the irregularity found
upon sufficient evidence by the trial court to have existed

was of such a nature that it may, under the circumstances of the case, as shown by the record, have affected the substantial rights of the aggrieved party and prevented a fair trial." (*Piercy* v. *Piercy*, 149 Cal. 163–166 [86 Pac. 507, 509]; *Merralls* v. *Southern Pac. Co.*, 182 Cal. 19–29 [186 Pac. 778]; *Loggie* v. *Interstate Transit Co.*, 108 Cal. App. 165 [291 Pac. 618].)

■ Appellant also contends that the matter of insurance was injected into the case by plaintiffs' attorneys. This contention is based upon these two facts: The witness Boysen was asked by counsel for plaintiffs this question: "Q. Now you are Mr. Summers' insurance broker? A. Yes." This would certainly be no basis for the remarks of counsel for defendant.

■ (2) Each juror was asked on his *voir dire* examination whether he or she was interested in any insurance company. This question was entirely proper and furnished no excuse for counsel's remarks. (*Arnold* v. *California Portland Cement Co.*, 41 Cal. App. 420–421 [183 Pac. 171]; *Williamson* v. *Hardy*, 47 Cal. App. 377 [190 Pac. 646]; *Baldarachi* v. *Leach*, 44 Cal. App. 603 [186 Pac. 1060]; *Potter* v. *Driver*, 97 Cal. App. 311 [275 Pac. 526]; *People* v. *Simon*, 80 Cal. App. 675–685 [252 Pac. 758].). The purpose of this question was to obtain a jury that was free from bias, prejudice or interest that would affect their verdict, and thereby prevent the very prejudice in the minds of the jury that the remarks complained of were calculated to instil.

A further discussion seems entirely unnecessary. We are of the opinion that the trial court exercised its discretion wisely in granting plaintiffs a new trial and that its action in so doing should not be disturbed by this court.

As further authority for the conclusion that we have reached, see *Citti* v. *Bava*, 204 Cal. 136 [266 Pac. 94]; *Gee* v. *Fong Poy*, 88 Cal. App. 627–641 [264 Pac. 564]; *Dameron* v. *Ansbro*, 39 Cal. App. 298 [178 Pac. 874]; *Kenna* v. *United Railroads*, 197 Cal. 148 [239 Pac. 1061]; *Baroni* v. *Rosenberg*, 209 Cal. 4 [284 Pac. 1111].

The order granting a new trial is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 26, 1930, and a

petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 22, 1930.