[Civ. No. 12845. First Dist., Div. One. Oct. 24, 1945.]

J. S. HUBER, Appellant, v. HENRY J. KAISER CO. et al.,
Respondents.

Robert G. Partridge and Remington Low for Appellant.

Bronson, Bronson & McKinnon for Respondents.

WARD, J.—This action was brought to recover damages for injuries suffered by plaintiff, referred to in the transcript of evidence as a "cement foreman" though his supervisory work also covered the installation of steel. The verdict of the jury was in favor of defendants.

The facts appear as follows: At the place where the accident occurred there were two large basins in which floating drydocks were being built. The basins fronted on the river, and a temporary dirt levee across the south end of the basins kept the water out while the drydocks were in the course of construction. At the time of the accident these dirt levees were being replaced by permanent concrete gates. Each gate was in two sections; on the far side of each basin and between the basins, separating them, were planked ramps on which the concrete trucks backed down to pour the cement, through chutes accessible to the trucks on the ramps, into the frames for the gates. The west section of the west gate had been completed by pouring concrete from the west ramp, and the next stage was to complete the east section of the same gate by pouring concrete from the center ramp. Plaintiff was the foreman in charge of the concrete and steel work. On the morning of the accident he had been working in the west basin where the west section of the gate across that basin was being built. When this work was completed, plaintiff ascended to the west ramp by means of a ladder. There he saw the truck driven by Walker parked in the middle of the west ramp 100 or 150 feet north of the south end thereof. He told the driver that no more concrete was needed for the west section of the gate and directed the driver to take the load to the center ramp, where the concrete was to be poured for the east section of the gate. He got into the truck and accompanied the driver while he drove to the north end of the west ramp and then into the center ramp. After the truck had backed south on the center ramp 150 or 200 feet, further progress was blocked by a parked tractor. Plaintiff got out of the truck and asked the driver of the tractor to move it out of the way, so that the truck could be backed down the ramp.

There is a conflict in the testimony as to the position occupied by the truck in backing south on the center ramp, and

also as to what was said between plaintiff and the truck driver. The ramp was about 700 feet long and 35 feet wide. The center part of the ramp was between guard rails and was approximately 25 feet wide. Abutting the guard rail at each side of the 25-foot center lane was a craneway containing tracks over which an overhead crane operated. Between the craneway and another guard rail at the edge of the ramp was an area about 3½ feet wide where the workmen walked, and which they used to park kits and other personal effects. According to plaintiff's witnesses, it was the practice of the drivers to back the trucks down the ramp on the side opposite the chute into which concrete was to be poured and to bring the truck, by a simple turn, into position for pouring. According to defendants' witnesses, it was the practice of the drivers to back the trucks down the west side of a ramp, using the guard rail to the left of the driver as a guide, and to bring the truck into position for pouring by making a turn one way or the other about 30 feet from the chute. Defendants call attention to evidence to the effect that the view of the driver of the transit mix truck, when backing, is obstructed to a great extent by the large concrete drum in back of the driver's cab, and that defendant Walker got out on the running board of his truck to be able to see at all behind him; and even then a large part of his field of vision to his right-hand side was cut off.

According to plaintiff's version, he directed the truck driver to keep the truck on the east side of the ramp as it backed south, and that it backed south in that position, 5 to 7 feet west of the guard rail on the east, until the parked tractor was encountered. After plaintiff had asked the tractor driver to move his vehicle out of the way, plaintiff returned to the truck. It was still on the east side of the center ramp. Plaintiff again told the truck driver to keep the truck on the east side of the ramp in backing south. Plaintiff then commenced walking to the south end of the ramp. For a short distance he walked on the east side of the ramp; he then moved to the west side. His position in walking south on the west side of the ramp was 5 or 6 feet east of the west guard rail. When he had walked about 150 feet he turned around and looked at the truck, which was still on the east side of the center ramp. While walking on the west side of the ramp in a position about 5 feet east of the guard rail, plaintiff was struck by the west side of the truck. He was then about

150 feet north of the south end of the center ramp. There was no obstruction on the east side of the ramp.

According to defendant Walker's version, he was not directed by plaintiff to keep the truck on the east side of the center ramp while backing south. The truck was backing south on the west side of the ramp, 2 or 3 feet east of the guard rail on the west, when it encountered the parked tractor. Plaintiff got out of the truck and asked the tractor driver to move. He then motioned defendant Walker to resume backing the truck south, and Walker complied. Plaintiff turned around and started walking south. He was approximately 50 feet south of the truck and next to the guard rail on the west side of the center ramp. Defendant Walker did not see him change his position. The truck angled toward the east side of the ramp. During this movement defendant Walker lost sight of plaintiff. He did not again see plaintiff until after plaintiff was struck by the truck. At that time the truck was about in the middle of the ramp.

Although the sufficiency of the evidence to support the judgment is not attacked, an understanding of the facts and the conflicting evidence is necessary in order fully to consider the attacks made by plaintiff upon the trial court's giving of certain instructions and its refusal to give others. The plaintiff and appellant contends that defendants' counsel did certain things upon the trial which amounted to prejudicial misconduct justifying a reversal in view of the conflicting evidence. This latter point may well be disposed of prior to a consideration of the instructions. It is alleged in an affidavit presented in support of the motion for new trial, that the attorneys for respondents, over the objection of plaintiff, argued that if plaintiff had a permanent injury he could get a permanent award in money from the Industrial Accident Commission. During the hearing on the objections the court stated: "As I said, this matter will be covered by the instructions to the jury. It is true that the Industrial Indemnity Exchange has expended certain moneys for benefits due the plaintiff, but, it, the Exchange, is entitled to recover any moneys spent by it out of any recovery that may be awarded the plaintiff in this case." No objection is raised to the statement of the court.

An affidavit filed by respondents on the motion for new trial sets forth that at the commencement of the trial the attorney who conducted the trial for the appellant was in-

terrogated by the court in chambers relative to filing a notice of lien by the employer of plaintiff, and that the attorney "acquiesced by an affirmative statement that it was impossible to conceal the existence of benefits of the compensation law in this case and stated that he would file a notice of lien on behalf of the employer." The claim of lien under the provisions of the Labor Code was filed, and set forth payments made for compensation, hospital and medical treatment, and that the insurance carrier averred on information and belief that it would become liable in the future for an amount not yet ascertainable. There is no affidavit on file which denies that the attorney for plaintiff "stated that he would file a notice of lien on behalf of the employer" and no denial that "it was impossible to conceal the existence of benefits of the compensation law in this case."

█ An employee may claim compensation for injuries and may bring an action for damages proximately resulting from an injury against a person other than an employer notwithstanding the payment of compensation by the employer. █ An employer who is obligated to pay compensation may bring an action against a third party for the injuries sustained by the employee, or, if the employee brings such action the employer may make a claim against such third party and may recover in the same suit the total amount of compensation, etc., paid to an employee or his dependents. (Lab. Code, § 3852.) In the present case the employee caused to be filed the claim of lien of the employer. "If the employee joins in or prosecutes such action, either the evidence of the amount of disability indemnity or death benefit paid or to be paid by the employer or the evidence of loss of earning capacity by the employee shall be admissible, but not both. Proof of all other items of damage to either the employer or employee proximately resulting from such injury or death is admissible and is part of the damages." (Lab. Code, § 3855.) █ At the request of plaintiff the trial court instructed: "It has been established in this case that at the time and place of the happening of this accident the plaintiff Huber was employed by the Pollock-Stockton Shipyard and was acting within the course and scope of his employment. In this connection and pursuant to the Labor Code of this State, the Industrial Indemnity Exchange, compensation insurance carriers for said employer, have filed their lien in this case for compensation benefits paid. You are not to take

this fact into consideration in determining the amount of damages to be awarded plaintiff, if damages are to be awarded. If plaintiff is entitled to recover damages they shall be assessed by you in accordance with the instructions given you on the subject.'' This instruction correctly states the law.

■ An injured employee is entitled to bring an action at law against a third party responsible for the injury and the injured person should not be prejudiced by reason of the fact that he is receiving compensation when such fact is extraneous to the issue. Only where the existence of compensation insurance is relevant to a material issue may it be considered by the jury and, therefore, may it be discussed in argument. (*Brown* v. *McCuan,* 56 Cal.App.2d 35 [132 P. 2d 838], citing *Hatfield* v. *Levy Brothers,* 18 Cal.2d 798 [117 P.2d 841]; *Weis* v. *Davis,* 28 Cal.App.2d 240 [82 P.2d 487]; *Gillette* v. *San Francisco,* 41 Cal.App.2d 758 [107 P.2d 627].) Here the existence of insurance was a fact of record which could not be kept from the jury, and the weight the jury attached to this fact and defendant counsel's argument thereon were fully considered by the trial judge on the motion for new trial. Further, the jury had been properly instructed concerning the lack of relevance to the subject of damages of the fact of compensation insurance, the basic issue upon which the fact is prejudicial.

■ Under all the circumstances of this case the claim of prejudicial misconduct is not well founded. Assuming that defendants' counsel in the argument stepped out of bounds, ''Where counsel is charged with misconduct for improperly injecting insurance into the case, the denial by the trial court of a motion for a new trial made on that ground will be deemed a determination by it of good faith on the part of counsel and that defendants were not prejudiced.'' (*Hatfield* v. *Levy Brothers, supra,* p. 814.) The cases cited by appellant for the proposition that defendant counsel's argument to the jury concerning compensation insurance constituted prejudicial misconduct were cases in which the trial judge granted a motion for new trial. In *Brown* v. *McCuan, supra,* the court said (pp. 41-42) : ''The cases on which appellant relies to support his position are clearly distinguishable in that they involve appeals from orders granting new trials where one of the grounds for the granting of the motion for a new trial was prejudicial misconduct of the attorney. (*Baroni* v. *Rosenberg,* 209 Cal. 4 [284 P.

1111] ; *Amore* v. *Di Resta,* 125 Cal.App. 410 [13 P.2d 986] ; *Ferrario* v. *Conyes,* 19 Cal.App.2d 58 [64 P.2d 975] ; *Mangino* v. *Bonslett,* 109 Cal.App. 205 [292 P. 1006].) *Walling* v. *Kimball,* 17 Cal.2d 364 [110 P.2d 58], notes this difference in approach to the problem of what constitutes prejudicial misconduct on appeal. But, when the case comes to us after the trial judge has denied a new trial urged upon these grounds and has thus found that the claimed misconduct was not prejudicial, the judgment must be affirmed unless there is no reasonable basis for such finding. We may not assume that the jury denied appellant any recovery because it believed he might get some compensation from another source. It is more reasonable to assume that the verdict followed the evidence on the issues of negligence and contributory negligence.''

█ The first three instructions to which plaintiff objects may be considered together. The first is: ''The defendant P. Walker had a right to move his truck at the time and place of the accident. Such right was equal in every respect to the right of the plaintiff to be where he was at the time of the accident. Just as their rights were equal, so also was the duty to exercise ordinary care under all the circumstances. The plaintiff could not assume or act or rely upon the assumption that he would not be injured by a moving truck. On the contrary, he was required to keep such a lookout for such trucks as, under similar circumstances, an ordinarily prudent person would have kept or done for his own protection.'' This instruction was approved in *Warnke* v. *Griffith Co.,* 133 Cal.App. 481 [24 P.2d 583]. A similar instruction was given in *Clarke* v. *Volpa Brothers,* 51 Cal.App.2d 173 [124 P.2d 377]. In the latter case the court said that the facts in the Warnke case were undisputed while those in the Clarke case were disputed, and that the issue of whether plaintiff was in a position of danger, accordingly, should be left to the jury. *Scott* v. *Gallot,* 59 Cal.App.2d 421 [138 P.2d 685] was an action wherein the trial court granted plaintiff's motion for a new trial. It was held under the facts in that case that the question of whether plaintiff was in a position of danger should be left to the jury, and suggested that the instruction should be modified on a retrial. Here the jury were told that although plaintiff had no absolute right to rely on the assumption that he would not be injured by a moving truck, the plaintiff was required to exercise only that

amount of care as under similar circumstances an ordinarily prudent person would have kept or done for his own protection. In view of the fact that there is no evidence that the truck driver was confined by regulation to the side of the ramp plaintiff thought he would come down, the fact that the ramp was over 700 feet in length, a greater distance than an ordinary city block, and the general instructions on contributory negligence which were given, it cannot be said that this instruction was prejudicially erroneous. The instructions given indicate that on this runway the parties were restricted by their reciprocal rights, which rights were to be determined by the jury in analyzing what would constitute ordinary care under the circumstances. These circumstances were still left in the jury's hands for determination. The jury cannot be said to have been misled, particularly in view of the other instructions on contributory negligence.

The second attacked instruction reads: "The defendant Walker at the time and place of this accident had a right to assume, so long as he himself was using ordinary care, that all other persons would use the same amount of care for their own safety. This right of the defendant to assume that other persons would use ordinary care continued until such time as the contrary was made apparent to him." A corresponding instruction reads: "If you find that the plaintiff was exercising ordinary care, he had a right to assume that others too would perform their duty under the law, and he had a further right to rely and act on that assumption. Thus it was not negligence for plaintiff to fail to anticipate injury which might come to him only from a violation of law or duty by another. However, an exception should be noted. The rights just defined did not exist if it was reasonably apparent to plaintiff, or in the exercise of ordinary care would have been apparent to him, that another was not going to perform his duty." It is claimed that, respecting assumptions, one standard is set up for plaintiff and another for defendants. It should be noted that the instruction claimed to be erroneous in reference to an "assumption" by Walker was contingent upon Walker's using ordinary care. In addition, the instruction contained language to the effect that the right to the assumption continued until "the contrary was made apparent to him." It may be said that the instruction with respect to plaintiff appears to be a definite and correct statement; the instruction in reference

to Walker is not incorrect though in form and substance it could be improved. In effect they are practically the same. Other instructions read: ''The mere fact, if you find it to be a fact, that the defendant Walker did not know of the presence of the plaintiff in the path of his truck will not excuse him from conduct which would have been negligent had he known of the presence of the plaintiff. It was the duty of Walker to make reasonable use of his faculties of sight and hearing and to apprise himself of danger to others, including the plaintiff, in the movement and operation of his truck, if danger there was.'' ''All persons must use ordinary care when their conduct may affect any other person or when they may be affected by the conduct of any other person. It is as much the duty of a person to exercise care for his own safety and protection as it is the duty of the other person to exercise ordinary care towards him with regard or with respect to his safety.'' When the instructions are read together it is apparent that defendants' right to indulge in assumptions was restricted by what he would have observed if he made reasonable use of his senses.

█ Appellant complains of the refusal to give an instruction embodying ''intent'' to injure plaintiff. The complaint is based upon negligence alone without reference to gross negligence or wilful misconduct. █ Intent is not ordinarily an essential element of negligence and it was not error to refuse such an instruction in this case.

█ Plaintiff also complains of three instructions on the subject of contributory negligence. The objections are rather technical and do not require quotation in full. The first one, it is contended, assumes that plaintiff was in a position of danger but the instruction is qualified as follows: ''. . . if you find that at and immediately before the accident the plaintiff was in a position of danger.'' This qualification could hardly lead the jury to believe the position of danger was undisputed. (*Hatfield* v. *Levy Brothers, supra; Corbin* v. *Bedel*, 69 Cal.App.2d 60 [158 P.2d 221].) █ ''In the second instruction on contributory negligence it is contended that it is assumed as a fact that plaintiff was working at a dangerous vocation and that he had voluntarily placed himself in a position of danger. The wording is qualified as follows: ''. . . as may be known to him.'' It is also contended that the jury was told that momentary forgetfulness of a known danger would prevent recovery as a matter of law.

Under certain circumstances the instruction, as given, may be proper. (*Ramos* v. *Service Bros.*, 118 Cal.App. 432 [5 P. 2d 623].) In *Neel* v. *Mannings, Inc.*, 19 Cal.2d 647 [122 P.2d 576] it was held that momentary forgetfulness of a known danger will not prevent a recovery unless the forgetfulness shows a want of ordinary care. (*Kirk* v. *Los Angeles Ry. Corp.*, 26 Cal.2d 833, 840 [161 P.2d 673].) In the present case there was no attempt to take the question from the jury and decide the matter as a question of law. The jury was sufficiently instructed generally on ordinary care (*Fowler* v. *Allen*, 49 Cal.App.2d 214 [121 P.2d 41]), and in particular in the instruction attacked the jury's attention was directed to the "exercise of ordinary care . . . commensurate with such danger as may be known to him."

 The third instruction of this group is short and reads as follows: "If there are two ways of performing an act, one of which is dangerous and the other safe, a person who, with knowledge of the danger and of the existence of both of the ways, voluntarily chooses the perilous one, is guilty of negligence." Plaintiff contends there was no evidence to justify the giving of the instruction, and that it is not a correct statement of the law; that one is not guilty of negligence merely because he voluntarily chooses the perilous way of performing an act—he is guilty of negligence only in the absence of a showing of the existence of an emergency, sudden peril or other circumstances justifying such choice. (38 Am.Jur. 873.) Defendants argue that the instruction was applicable to the evidence because it was shown therein that there was a strip 3 feet wide on each side of the ramp, protected by guard rails, where plaintiff could have walked and the truck could not have been driven; and that the instruction is a correct statement of the rule as set forth in 19 California Jurisprudence 588. An instruction similar to the one given here was approved in *Stricklin* v. *Rosemeyer*, 61 Cal.App.2d 359 [142 P.2d 953].

 Plaintiff also complains of the refusal of the court to give an instruction to the effect that contributory negligence is not based upon a possibility of avoiding an accident, but it appears to be covered sufficiently by the following instruction, also proposed by plaintiff: "No one can be charged with contributory negligence merely because he might have avoided the accident had he acted differently. If the plaintiff at the time and place of the happening of this accident did all that

an ordinarily prudent man would have done under the same or similar circumstances, then that is all the law required and he is not chargeable with contributory negligence."

██ Plaintiff also complains of the refusal to give an instruction on imminent peril. Defendants argue that plaintiff's negligence was not based on any act of his when confronted with a sudden peril, but on his not avoiding the known peril of the backing truck on the ramp either by keeping to the walkway or by keeping a sufficient lookout and that the presence of the backing truck was at all times known to plaintiff and therefore could not constitute sudden peril. The defendants' position must be sustained.

██ Plaintiff requested and the court refused to give an instruction covering and enlarging on Code of Civil Procedure, section 2061, subdivision 3 "That a witness false in one part of his testimony is to be distrusted in others." Instructions on the subdivision of section 2061 are to be given "on all proper occasions." Appellant does not call attention to any particular reason why it would have been proper to give the instruction in this case except to say that "the testimony was sharply in conflict on material issues." Unless the refusal was prejudicial, the action of the court is not a ground for reversal. (*Wallace* v. *Pacific Electric Ry. Co.*, 105 Cal.App. 664 [288 P. 834]; *Medlin* v. *Spazier*, 23 Cal.App. 242 [137 P. 1078]; *Reynolds* v. *E. Clemens Horst Co.*, 35 Cal.App. 711 [170 P. 1082]; *McSweeney* v. *East Bay Transit Co.*, 60 Cal. App.2d 807 [141 P.2d 787].) And here the refusal to give the instruction could not have been prejudicial as no claim of falsehood has been made.

When all of the instructions attacked are read no error appears that may be classified as prejudicial. When the instructions are read in their entirety it appears that each side was treated justly and fairly.

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 20, 1945. Carter, J., voted for a hearing.