Adams, P. J., and Thompson, J., concurred.

[Civ. No. 7437. Third Dist. Nov. 24, 1947.]

ALLEN ADAMS et al., Appellants, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Respondents.

Gumpert & Mazzera, Mazzera, Snyder & De Martini and J. Calvert Snyder for Appellants.

Jones & Quinn and Gilbert L. Jones for Respondents.

THOMPSON, J.—Seven individuals joined as plaintiffs in this suit for damages for personal injuries received as the result of a railroad crossing accident. They were workmen on a farm, and were riding in a truck operated by the agent of their employer at the time of the accident. Their employer carried compensation insurance. As the driver of the truck was attempting to cross the railway track ahead of an approaching freight train, the truck was struck and plaintiffs were thrown from the machine and injured. The cause was tried with a jury which returned a verdict in favor of the defendants. From the judgment which was accordingly rendered this appeal was perfected.

The complaint is couched in separate counts for each plaintiff, which causes were united in this action. In each cause general and special damages for medical and hospital expenses and loss of earning capacity were alleged. In the course of

the trial, evidence of the existence of compensation insurance was adduced by both parties to the action. The appellants present two issues on appeal: First, was the defendants' attorney guilty of prejudicial misconduct in referring to the compensation insurance, and, second, did the court err in refusing to admit in evidence a rule of the Railroad Commission prescribing the specifications of automatic wigwag warning devices when they are required to be installed at certain railroad crossings.

The Southern Pacific Company owns and operates a railroad track and equipment in San Joaquin County. About one mile north of Ripon in that county the roadway crosses the track at an angle. That crossing is open to view from the road for a considerable distance. At 4:30 p. m. on November 2, 1944, the plaintiffs were riding in their employer's Chevrolet truck, in returning from their farm work, along the county road. A freight train was approaching the crossing in full view. The whistle had been blown and the bell was ringing. The driver of the truck attempted to cross the track ahead of the approaching train. The engineer assumed that the truck would stop for the train to pass. The driver of the truck failed to do so. When the engineer realized that the truck was not going to stop, the emergency brakes were applied too late to avoid a collision. The truck was hit and the workmen were thrown out and injured. The appellants do not contend there was insufficient evidence to support the verdict or judgment.

The cause was tried by a jury which returned a verdict in favor of the defendants. A motion for new trial was denied. From the judgment which was rendered against plaintiffs, they have appealed.

The defendants' attorney was not guilty of prejudicial misconduct in questioning witnesses on cross-examination with respect to compensation insurance which was carried by plaintiffs' employer, or in referring to that subject in his argument to the jury. Plaintiffs' employer carried indemnity insurance with the Colonial Mutual Insurance Company covering the accident in question. Plaintiffs' attorney first disclosed that fact. · He called and examined Floyd Sisk, an attorney and claims manager of that insurance company. Neither plaintiffs' employer nor the indemnity company was a party to this action. Plaintiffs' attorney, Mr. Snyder, asked the witness Floyd Sisk: "Have you direct knowledge of all expenditures that were made *in connection with the insurance*

*situation with the plaintiffs in this case?"* to which he replied, "Yes, I have." The witness was then asked, "I direct your attention first to Allen Adams. Would you tell us what the expenditures were to him that were paid and what they amount to?" To that question defendants' attorney objected. In support of his contention that the evidence was competent, Mr. Snyder, plaintiffs' attorney, quoted from section 3855 of the Labor Code, as follows: "If the employee joins in or prosecutes such action, either the evidence of the amount of disability indemnity or death benefit paid or to be paid by the employer or the evidence of loss of earning capacity by the employee shall be admissible." After warning counsel for the plaintiffs, and the defendants' objection was overruled, the court said, "You may do so, but I think it also opens this other question [regarding the disclosure of existing compensation insurance] which I thought had been closed." Plaintiffs' attorney then offered in evidence Doctor Sanderson's report of his medical services, included in Exhibits V, S, T and U, which were received. The court then remarked, "Very well. You well remember the Court's former ruling?" These exhibits each contains reference to the compensation insurance in the following language: "Ins. Co. Colonial Mutual Ins. Co. Employer Jalwant Singh," (the employer of plaintiffs). After the witness, Mr. Sisk, upon inquiry from plaintiffs' attorney, over the objection of defendants' counsel, had testified in detail to the items which had been paid by the insurance company, including $758.15 on account of the claim of Adams, $228.70 to Price, and $15,340.33 to Hayes, defendants' attorney, on cross-examination, asked him: "How much money was paid to Adams *for compensation?"* To that question the plaintiffs objected on the ground that it was incompetent and immaterial. That objection was sustained. The jury was admonished to disregard the question.

Continuing the cross-examination of Mr. Sisk, he was asked and gave, without objection, the name of the insurance company which he represented. He was then asked, "Why was the Colonial Insurance Company paying out these sums of money for these men?" The following colloquy then occurred:

(The witness) "A. I can give you the answer to that. Mr. Snyder: (addressing the witness) You may answer that; I have no objection to it. A. Under the California law, and under the State Labor Code, all employers are required to be insured for injury; the Colonial Insurance

Company are the insurance carrier for the employer of these employees, and when they became injured in that accident, it thereby became the duty of Mr. Singh, under the laws, to furnish them with medical care and attention, and they having been injured in that respect, it thereby became our duty to do that which we undertook to do, and we are doing it."

It is true that objections were subsequently sustained to questions propounded by defendants' attorney as to what proportion of the money paid by the insurance company was for compensation as distinguished from costs of medical and hospital expenses. It is also true that an objection was sustained to the question asked of Mr. Sisk, as to whether his insurance company had employed attorneys to try this case in behalf of the plaintiffs. That question was asked to show the interest which the insurance company might have in the outcome of the cause. Subsequently, the last question was answered by the witness, with the consent of plaintiffs' attorney, who said: "Go ahead, Mr. Sisk; I am perfectly willing for you to express it." The witness then replied, "We will have a lien upon any judgment that may be recovered by these injured men to pay us for our expenditures which we have necessarily paid under the law."

Under the record in this case it may not be held that defendants' attorney was guilty of prejudicial misconduct in disclosing the existence of compensation insurance. We are satisfied that defendants' attorney was in good faith in asking the questions of the insurance company's managing agent on cross-examination, to which objections were sustained, and in referring to the subject of compensation insurance in his argument to the jury. He had a right to show the interest of the witness in the outcome of the trial. The existence of compensation insurance was shown with the express consent of plaintiffs' counsel. Plaintiffs may not complain of prejudicial evidence which was adduced by themselves or with their consent. Moreover, we must assume plaintiffs were not prejudiced by that evidence since the jury was clearly instructed at plaintiffs' request that they were entitled to full compensation shown by the evidence regardless of the amounts which were advanced or paid by the insurance company to any of the plaintiffs for medical or hospital expenses, or otherwise. That instruction reads:

"It appears from the evidence that plaintiffs have received some payments from the Colonial Mutual Insurance Com-

pany *by way of compensation* and that the Colonial Mutual Insurance Company has made expenditures on account of the injuries sustained by plaintiffs in an attempt to cure them. You are instructed that the Colonial Mutual Insurance Company will have a first lien upon any judgment plaintiffs may recover herein, and will be repaid in full for any expenditures made to the plaintiffs or any of them for any medical attention given them. Therefore, if you find for the plaintiffs, or any of them, *you will compensate such plaintiffs for their damage as the Court has instructed, and you will not deduct from the amount you believe they are entitled to because of any compensation they, or any of them, may have received from the Colonial Mutual Insurance Company, or for any expenditures made by Colonial Mutual Insurance Company for medical care and attention furnished them.*" (Italics added.)

Even though there should be a doubt concerning the absence of prejudice, as a result of defendants' attorney asking questions regarding the existence of compensation insurance, or in his argument to the jury, the court's denial of plaintiffs' motion for a new trial in this case is controlling on this court upon that issue. The trial judge was better qualified than is this court to determine whether defendants' counsel acted in good faith, and whether his conduct in that regard was prejudicial to the plaintiffs. (*Brown* v. *McCuan,* 56 Cal.App.2d 35, 41 [132 P.2d 838]; *Huber* v. *Henry J. Kaiser Co.,* 71 Cal.App.2d 278, 285 [162 P.2d 693].) In the case last cited it is said in that regard:

"Under all the circumstances of this case the claim of prejudicial misconduct is not well founded. Assuming that defendants' counsel in the argument stepped out of bounds, 'Where counsel is charged with misconduct for improperly injecting insurance into the case, the denial by the trial court of a motion for a new trial made on that ground will be deemed a determination by it of good faith on the part of counsel and that defendants were not prejudiced.' (*Hatfield* v. *Levy Brothers* [18 Cal.2d 798 (117 P.2d 841)], p. 814.)"

Likewise, all of the cases cited by appellants in this case, in support of their contention that respondents' attorney was guilty of prejudicial misconduct, are referred to in the Brown case, *supra,* and properly distinguished by calling attention to the fact that motions for new trials were granted

in each of those cases, and not denied, as it was in the present action.

We conclude the conduct of defendants' attorney with reference to alleged prejudicial misconduct is not reversible error in this case.

█ Finally, the appellants contend that the court erred in denying their offer in evidence of the Railroad Commission's general order, or rule 75-B, with reference to circumstances under which certain specified crossing signs or signals must be maintained by a railroad company. They argue that "the facts and circumstances existing at the particular crossing required the existence of an automatic signalling device." But appellants fail to call this court's attention to any facts or circumstances disclosed by the record, and we are unable to find any such facts in the evidence, which would make that particular rule contended for by appellants applicable, or which would require a wigwag or automatic signal device to be maintained at that particular crossing. We find no evidence in the record that the crossing in question created "an unusual hazard or danger" which would require the maintenance of an automatic signal. The crossing was in a country district. The usual cross-arm sign was maintained at that crossing. The appellants recognized the fact that an automatic signal was required only when the conditions "at a crossing create an unusual hazard or danger." At their request the jury was so instructed. The jury was repeatedly instructed that it had the duty to determine whether "under all of the conditions found to exist at the crossing in question," the railroad company was guilty of negligence in "not installing wigwag or other protective devices at the intersection in question." We are unable to perceive how plaintiffs could have been prejudiced by excluding from the evidence the Railroad Commission's rule 75-B. It is not contended that rule specifically required an automatic signal at that particular crossing regardless of conditions. We assume there was no order from the Railroad Commission, under subdivision IX of that rule, to place an automatic signal at that crossing. The cross-arm sign which was maintained at that crossing apparently conformed to subdivision V (a) of that rule. It was daylight when the accident occurred. The plaintiffs were coming from their work. Evidently, the driver of their truck was familiar with that crossing.

The cases cited by appellants in support of their contention that the railroad company was guilty of negligence in failing to maintain an automatic device at that crossing are not in point. They are based on facts and physical conditions definitely showing unusual hazards which do not exist in the present case. In *Harper* v. *Northwestern Pacific Railroad Co.*, 34 Cal.App.2d 451 [93 P.2d 821], a nonsuit was granted by the trial court. That order was reversed. The accident occurred in the city of Petaluma on a dark night. A cross-arm sign at that crossing was obscured by a row of trees extending along Wilson Street. There was no light at the crossing. The only light in that vicinity was a 60 candle-power electric lamp on a pole 300 feet from the crossing. The headlight of the engine was not visible because the train had passed the crossing on a spur track and the freight cars blocked the crossing. The court said, at page 453: "During all this time no whistle was sounded nor bell rung." The plaintiffs' father, who was killed in the accident, was not familiar with that crossing. He drove his automobile directly into the freight car which blocked the crossing. Clearly, that was an unusually hazardous crossing. Under such circumstances the order granting a nonsuit was properly reversed.

In the case of *Morris* v. *Sierra & S. F. Power Co.*, 57 Cal. App. 281 [207 P. 262], plaintiff recovered judgment for damages for loss by fire of his store and stock of goods at Chinese Camp, on account of alleged defect of defendant's telegraph wires which became charged with high power voltage. The plaintiff, Morris, maintained a private telephone wire which crossed beneath defendant's wires near the vicinity of the store. Shortly before the fire plaintiff had readjusted the poles that supported his telephone wire in such a manner as to bring his wire within about an inch of the high-power wires of the defendant. Order number 26 of the Railroad Commission provided specifically that when one telegraph or telephone wire crosses over or under another similar wire there shall be a "minimum clearance, above or below such lines, of 2 feet, unless suitably supported to prevent contact." Plaintiff had notice and knowledge of that rule. He failed to comply with that order. On appeal it was assumed that proximity of the two wires, contrary to the prescribed rule, caused the fire. This court held that plaintiff's negligence precluded him from recovering damages

on that account. The judgment was therefore reversed. Clearly, that case is not authority holding that the railroad company was guilty of negligence in this case, as a matter of law, in failing to maintain a wigwag signal device at the crossing. No such specific order required the installing of a wigwag system under the physical conditions existing at the crossing.

In the case of *Clark* v. *Pacific Gas & Electric Co.*, 118 Cal. App. 344 [5 P.2d 58, 6 P.2d 297], upon which appellants also rely, the facts are likewise distinguishable from those of the present case. In that case the defendant maintained high-power wires attached to poles in the city of Eureka. On the pole upon which plaintiff, a 12-year-old boy, was injured, by climbing to the top where he came in contact with the charged wires, the defendant fastened cross-cleats or steps which extended to within about 18 inches of the ground, contrary to the express prohibition of order 64-A of the Railroad Commission. The said order provided that ''the lowest step on any pole supporting an electric power line shall not be less than 7 feet 6 inches from the ground.'' Judgment was rendered for plaintiff on the theory that the ladder became an attractive nuisance which enticed the child to climb to the wires as a result of which he was injured. On appeal, that judgment was affirmed. No such specific order of the Railroad Commission is involved in this suit.

We conclude that the trial court in this case did not err in refusing to admit in evidence general order 75-B of the Railroad Commission.

For the foregoing reasons the judgment is affirmed.

Peek, J., and Adams, P. J., concurred.

A petition for a rehearing was denied December 22, 1947, and appellants' petition for a hearing by the Supreme Court was denied January 22, 1948.