[Civ. No. 15753.  Second Dist., Div. One.  Jan. 6, 1948.]

CARMEN SAVOIA, Respondent, v. DAN H. MOOREHEAD
et al., Appellants.

Chase, Rotchford, Downen & Chase, Richard T. Drukker and Donn B. Downen, Jr., for Appellants.

Samuel A. Rosenthal for Respondent.

YORK, P. J.—The instant action is one for damages for wrongful death brought by the father of decedent, a minor. In his complaint, plaintiff named as defendants Dan H. Moorehead and Jane Moorehead, individually and as copartners doing business as Dan Moorehead Construction Company, their employee, James Parrish; the Airline Bus Company, its employees, and several fictitious defendants. Plaintiff alleged that while his deceased minor son was upon Highway 33, near Avenal, Fresno County, on July 3, 1944, he was struck by a truck negligently operated by an agent of defendants Moorehead so as to cause him to be thrown to the pavement and that he was then struck and run over by a bus negligently operated by an agent of the Airline Bus Company; that such alleged acts of negligence proximately caused the death of said minor, Anthony Savoia, to the damage of plaintiff.

At the start of the trial, plaintiff dismissed the action against all defendants except Dan H. Moorehead, Jane Moorehead and James Parrish, and the jury rendered its verdict in their favor. Thereafter, upon motion of plaintiff, the court granted a new trial. This appeal is prosecuted from the order granting said motion.

A statement of facts which respondent agrees is "correct" appears in appellants' opening brief to the following effect:

"The Macco-Robinson Construction Company, employer of respondent's decedent, was constructing a pipe line running in a general southerly direction along Highway 33. The point at which this pipe line began with reference to this

accident was approximately one mile north of the point of impact. The pipe line was being laid on the west side of the highway approximately eighteen feet west of the west shoulder running along the highway. This shoulder was an oiled dirt shoulder approximately five to six feet wide. To lay the pipe line it was necessary that an excavation be dug, the pipe fitted, sealed with tar, cemented, and lowered into the excavation. . . .

"From the northern beginning of the excavation to the point of impact, a distance of approximately one mile, certain 'Men at Work' signs were located at intervals of several hundred feet. These signs were placed approximately two to three feet west of the west edge of the highway and were themselves about three feet in width. At a point opposite the point of impact and at the west side of the highway there was parked a truck having an ordinary tar pot connected to the rear end in 'trailer fashion.' Both the truck and the 'trailer' were situated just west of the west shoulder of the highway. The respondent's decedent, who had been on the job for one or two days, and who was about sixteen years old, was engaged in drawing hot tar from the tar pot in buckets and carrying the tar over to the excavation for use by other employees of the construction company. At or about the time the accident occurred, the decedent was drawing a bucket of hot tar and either the bucket or the tar pot itself burst into flames. The decedent then dropped the bucket and ran in an easterly direction onto the highway. He reached a point approximately midway across the highway when he suddenly reversed his direction from east to west and started back toward the west edge of the highway. When he had reached a point approximately two feet east of the west edge of the pavement he was struck by appellants' truck.

"The right front fender and bumper came in contact with decedent and carried him across the highway in an easterly direction, dropping him on the highway where his leg was run over by the Airline Bus. Death resulted during an amputation of this leg."

The trial court granted respondent's motion for a new trial "on the ground of errors of law occurring in the trial and excepted to by the party making the application and motion for new trial."

While appellants urge that "there was no error of law in the record," they assert that the trial court could

have relied solely upon two possible errors of law in granting the motion for the new trial, to wit:

"(a) The admission of the questions and answers relating to the possibility of the receipt of consideration by respondent for the dismissal of the joint defendants other than appellants; and (b) the admission in evidence of Exhibit 'G' and the failure to remove this evidence from the jury's consideration."

"It is settled that before a voluntary dismissal as to one defendant will operate as a release of a codefendant it must appear that the defendants are joint tort-feasors and that plaintiff has received some satisfaction for such dismissal. (*Shea* v. *City of San Bernardino,* 7 Cal.2d 688 [62 P.2d 365]; *Commercial Transfer Inc.* v. *Daigh & Stewart,* 33 Cal.App. 2d 370 [91 P.2d 951]; *Barsh* v. *Metro-Goldwyn-Mayer,* 32 Cal.App. 2d 556, 558 [90 P.2d 371].)" *Key* v. *Caldwell,* 39 Cal.App.2d 698, 701 [104 P.2d 87].

Therefore, say appellants, when counsel for respondent announced his dismissal of action against the codefendants, stating that there had been no consideration or satisfaction for the same, "the door was closed to appellants in the matter of a *retraxit* unless appellants could establish by evidence the fact that respondent had received consideration amounting to a satisfaction in exchange for his dismissal of the other alleged tort feasors."

Appellants were permitted to examine respondent (in chambers and out of the hearing of the jury) over the objection of his counsel, as follows:

By Mr. Downen: "Q. And you knew that the terms of the complaint charged the defendant Airline Bus Company with having been guilty of some negligence which was a direct and proximate cause of the injuries and resulting death of your son, that is true, isn't it? A. That is true. Q. And you do know that they no longer are a defendant, that they have been dismissed through your counsel, that is true, isn't it? A. Well, I did everything that my lawyer tells me, that is all; I don't know nothing about it. Q. Your lawyers told you that the Airline Bus Company has been dismissed? A. That is what he told me. Q. Now, let me ask you this question, Mr. Savoia; In consideration, that is in return for your consenting to the dismissal of the Airline Bus Company have you received any money whatsoever? A. Not from bus line, I never receive a dime. Q. Now, has the bus line agreed or

said that they would sometime in the future after the trial of this case or during the trial of the case pay you any sums of money in return for your having consented to that dismissal? A. You want to know if I would accept that money? Q. No; I want to know if they have made you a promise to pay you any money in the future in return for the dismissal? A. Not that I know of, I never hear of it. Q. Not that you know of. Now, Mr. Savoia, do you know whether or not the bus company has agreed to repay and apply upon any lien which the employer Macco Construction Company or its insurance carrier might have against any possible judgment which you receive in this action any sum of money in return for your having consented to the dismissal of that company, the Airline Bus Company? A. I don't know what that is, I don't know a thing about the Airline, I don't know what is going to come. I have no arrangement on anything, I am just neutral, that is all, I am just taking my lawyer's word that is all. Q. Do you know whether any other arrangement has been made whereby the bus company, that is, the Airline Bus Company will pay to Macco Construction Company or to the insurance carrier for Macco Construction Company any sum of money in return for their having been dismissed from this action; do you know? A. I don't know whether they are going to do or not, I don't know nothing. . . . The Court: Do you still insist that you want that matter before the jury? Mr. Downen: Yes, your Honor. The Court: All right. Call the jury in. How do you want to present it to the jury? Mr. Downen: On the record, your Honor. The Court: All right. The reporter can read it. . . . The Court: The Court finds the jurors present and in their places. Members of the jury, during your absence the reporter took down some testimony from the plaintiff, Carmen Savoia, which the reporter will now read to you. (The reporter then read to the jury the testimony of the plaintiff, Carmen Savoia, which was taken in chambers at a time when the jury was not present.)''

That the trial court considered this testimony prejudicial to respondent is evinced by his comments at the time he granted the new trial, to wit: ''When you analyze what the witness, Carmen Savoia, said in that respect, it was simply that he knew absolutely nothing at all; that he was just a poor ignorant Italian and he did not know anything about it and he did not even know what counsel was talking about. There was nothing of any constructive value in what he said and

nothing of evidentiary value to go before the jury. Still I permitted it to go before the jury and I am satisfied that I committed error in letting it be done for the simple reason that it exaggerated in the minds of the jurors the old question of insurance—that somewhere in the background, some insurance was going to take care of something. That was wrong. . . . I don't think that that matter was proper to go before the jury."

"The trial court, no less than the appellate·court, is expressly enjoined by article VI, section 4½, of our Constitution to deny a new trial for error of law unless such error is prejudicial. If it is clear that the error could not have affected the result of the trial, the court is bound to deny the motion. But if the error can possibly have been prejudicial, the trial court must consider its probable effect and decide the motion accordingly." *Brown* v. *George Pepperdine Foundation,* 23 Cal.2d 256, 262 [143 P.2d 929].

And, as stated in *Brignoli* v. *Seaboard Transportation Co.,* 29 Cal.2d 782, 792 [178 P.2d 445] : "Whether or not the rights of the moving party were prejudiced by an error of law occurring at the trial is a matter which rests so completely within the discretion of the trial judge that an appellate court will not interfere with his action in granting a motion for a new trial upon that ground except for a manifest abuse of discretion."

In *Ferrario* v. *Conyes,* 19 Cal.App.2d 58, 61 [64 P.2d 975], the order of the trial court granting plaintiff a new trial was affirmed where defendant's counsel injected before the jury, the issue of his being paid compensation by his employer. It was there stated: "Where a workman is injured in the course of his employment by a person other than his employer, he is entitled to bring an action at law against such party and he is not to be prejudiced in such action by the fact that he may be receiving compensation. . . . It is well established in this state that it is prejudicial misconduct in an action of this type for the opposing party to bring before the jury the fact that the employee suing a person other than his employer is entitled to or being paid compensation by his employer."

In granting the motion, the trial court necessarily considered the probable effect upon the jury of the evidence objected to, especially the question: "Now, Mr. Savoia, do you know whether or not the bus company has agreed to repay and apply upon any lien which the employer Macco Construc-

tion Company or its insurance carrier might have against any possible judgment which you receive in this action any sum of money in return for your having consented to the dismissal of that company, the Airline Bus Company?'' And, there was no abuse of discretion by the court when it decided that such evidence was prejudicial to respondent's cause.

In view of the conclusion heretofore reached, it is not deemed necessary to decide whether the admission in evidence of defendants' Exhibit G constituted prejudicial error. An examination of the record with respect to this document reveals that it was marked for identification at the request of appellants and later in the trial was offered in evidence by respondent's counsel, at which time the trial court stated that he had grave doubts ''as to any of the memorandum being admissible in evidence.''

For the reasons stated, the order appealed from is affirmed.

Doran, J., and White, J., concurred.