[L. A. No. 29558. In Bank. Aug. 19, 1968.]

BERTHA MERLOS vda. DE CRUZ et al., Plaintiffs and
 Respondents, v. DAVID WALLACE REID et al.,
 Defendants and Appellants.

Murchison, Cumming, Baker & Velpmen, Howard C. Velpmen and Henry F. Walker for Defendants and Appellants.

Eckhardt & Kearney, Olen G. Miller and Matthew M. Kearney for Plaintiffs and Respondents.

Edward I. Pollock, Robert E. Cartwright, Theodore A. Horn, Robert G. Beloud and Leonard Sacks as Amici Curiae on behalf of Plaintiffs and Respondents.

SULLIVAN, J.—In this action for wrongful death brought by the widow and three minor children of an agricultural worker, defendants David Wallace Reid and Don Dale appeal from a judgment entered upon a jury verdict in favor of plaintiffs in the sum of $40,000.

Decedent was employed on the Kitigawa Ranch as a ''pusher'' or ''straw boss.'' Kitigawa ordered fertilizer from a chemical company which contracted with defendant Dale to haul it to the ranch. On April 9, 1964, defendant Reid, an employee of Dale, drove the latter's equipment to the chemical company, picked up a load of fertilizer, and left to deliver it, accompanied by one Cuesta, a chemical company employee who was to show Reid where the deliveries were to be made.

The Dale equipment consisted of a tractor, a flatbed semi-trailer and a flatbed pull-trailer connected with the semi-trailer by a tongue, leaving a space of about 4½ feet between the two trailers. The tractor was equipped with an adjustable mirror on each side and a handhold behind each door of the cab for use in climbing into or behind the cab, but it was not equipped with handholds or safety rails along the back of the cab. The cab had a rear window measuring about 8 inches by 16 inches. The flatbed trailers were loaded with sacks of fertilizer about 2 feet high, secured by ropes.

After making a delivery at another ranch, Reid arrived at the Kitigawa establishment which actually consisted of two separate ranches, the home ranch and the Zane Grey ranch, about three-fourths of a mile apart. After Reid and Cuesta began to unload the pull-trailer at the home ranch they were assisted by a ranch crew of which decedent was a member.

While a portion of the fertilizer was being unloaded at the home ranch, a supervisor drove Reid to the Zane Grey ranch and showed him where the remainder was to be delivered. The supervisor also pointed out to him a sandy spot inside the ranch entrance where trucks had become stuck in the past and told Reid to speed up when he reached this point.

Reid then returned to the home ranch, where the ranch crew were finishing the first part of the unloading. The ranch supervisor told them that when this was completed, they were to go to the Zane Grey ranch in a Kitigawa truck in order to unload the remainder. The entire crew, with the exception of decedent, did as directed. Reid and Cuesta followed in the Dale equipment, with Reid driving. When he reached the entrance to the Zane Grey ranch, Reid accelerated the truck in order to get through the sandy area. Decedent who was riding on the front end of the pull-trailer fell off at this point and the wheels of the trailer ran over his body.

Plaintiffs, as dependents of decedent, filed a claim for death benefits with the Industrial Accident Commission (now Workmen's Compensation Appeals Board). (Lab. Code,

§§ 4700-4705.)[1] This claim was settled for the sum of $18,000 and the agreement of compromise and release was duly approved by the commission. (§§ 5000-5004.) The agreement provided in relevant part: "As part consideration of this compromise and release the defendants Kitigawa ranches and Mission Insurance Co. [the employer's compensation insurer] are waiving any right to subrogation as part consideration for this compromise and release."

Plaintiffs as decedent's heirs also commenced the present action for wrongful death. Their complaint is in two counts, the first alleging that defendants were negligent in the maintenance and operation of their truck and trailers, and the second that they were negligent in failing to furnish decedent with a safe place in which to work (§§ 6400-6403). At trial plaintiffs, in order to show the damages sustained by them as the result of decedent's death, introduced evidence of his contributions to their support, the circumstances of his family life, and his life expectancy together with that of his wife. Thereafter defendants attempted without success to introduce evidence of plaintiffs' claim before the Industrial Accident Commission and of the $18,000 received by them as a result of the compromise and release made with decedent's employer.[2]

Defendants' principal contention before us is that the court erred in excluding the above evidence and thereby permitted plaintiffs to make a "double recovery." They argue that under *Witt* v. *Jackson* (1961) 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641], and cases following *Witt*, if for any reason the employer is not entitled to recoup compensation or death benefits paid to the employee or his dependents, the latter in any action against a third party tortfeasor may recover as damages only the excess over the amount of such compensation or other benefits paid.

When an employee's injuries or death are compensable under the Workmen's Compensation Act, the right of the employee or his dependents, as the case may be, to recover such compensation is the exclusive remedy against the employer. (§ 3601; *Witt* v. *Jackson, supra,* 57 Cal.2d 57, 69.)

---

[1]Hereafter, unless otherwise indicated, all section references are to the Labor Code.

[2]In proceedings outside the jury's presence defendant made an offer of proof "in connection with the compromise and release, and that would be that there would be evidence introduced in this case showing that the plaintiffs received the sum of $18,000." No mention was made therein that decedent's employer was concurrently negligent. The offer was rejected.

However, the claim for such compensation does not affect the claim or right of action of the employee or his dependents "for all damages proximately resulting from such injury or death against any person other than the employer." (§ 3852;[3] *Jacobsen* v. *Industrial Acc. Com.* (1931) 212 Cal. 440, 447-448 [299 P. 66]; *Castro* v. *Fowler Equipment Co.* (1965) 233 Cal.App.2d 416, 420 [43 Cal.Rptr. 589]; *Tate* v. *Superior Court* (1963) 213 Cal.App.2d 238, 248 [28 Cal.Rptr. 548]; see 2 Hanna, California Law of Employee Injuries and Workmen's Compensation (2d ed. 1967) § 23.01; California Workmen's Compensation Practice (Cont. Ed. Bar 1963) p. 599.)

The Workmen's Compensation Act provides that an employer[4] may recoup compensation or death benefits paid to or on behalf of an employee or the dependents of an employee who has sustained an industrial injury or death, as the case may be, caused by a third party tortfeasor. We have said that such statutory provision is "merely a legislative recognition of the equitable doctrine of subrogation, . . ." (*Western States etc. Co.* v. *Bayside Lbr. Co.* (1920) 182 Cal. 140, 148 [187 P. 735]; see also, California Workmen's Compensation Practice (Cont. Ed. Bar 1963) p. 595.) In *Witt* v. *Jackson, supra,* 57 Cal.2d 57, 69, we pointed out that "There are three ways in which an employer who becomes obligated to pay compensation to an employee may recover the amount so expended against a negligent third party. He may bring an action directly against the third party (Lab. Code, § 3852), join as a party plaintiff or intervene in an action brought by the employee (Lab. Code, § 3853), or allow the employee to prosecute the action himself and subsequently apply for a first lien against the amount of the employee's judgment, less an allowance for litigation expenses and attorney's fees (Lab. Code, § 3856, subd. (b))." We there held, however, that the employer's right to recover against the third party tortfeasor is defeated when the employee's injuries are caused by the concurring negligence of the employer and that in such circumstances, whether the action is brought against him by the

---

[3]Labor Code section 3852 provides in pertinent part: "The claim of an employee for compensation does not affect his claim or right of action for all damages proximately resulting from such injury or death against any person other than the employer." As used in section 3852 however, "'Employee' includes the person injured and any other person to whom a claim accrues by reason of the injury or death of the former." (§ 3850, subd. (a).)

[4]or the employer's insurance carrier (see § 3850, subd. (b).)

employer or the employee, the third party, upon establishing such concurrent negligence, is entitled to have the judgment against him reduced by the amount of compensation paid to the injured employee. (*Witt* v. *Jackson, supra,* pp. 71-73.)

In the case at bench defendants neither introduced nor offered any evidence bearing upon the concurrent negligence of decedent's employer, let alone any evidence that such negligence proximately caused decedent's death. (See *Harness* v. *Pacific Curtainwall Co.* (1965) 235 Cal.App.2d 485, 489-490 [45 Cal.Rptr. 454].) Accordingly, they did not bring themselves within our holding in *Witt* requiring a reduction of the judgment.

Defendants nevertheless argue that according to the principle underlying our holding in *Witt* the injured employee or his dependents in a death case are entitled to be made whole by the receipt of compensation benefits ''plus any damages in excess thereof''; that if for any reason the employer is unable to recoup the benefits paid, the employee can recover only the excess; and that where, as here, the injured employee or his dependents recover judgment against the third party tortfeasor for the full amount of his or their damages without any reduction based on the employer's concurrent negligence and the employer waives all reimbursement of compensation benefits paid by him, the injured employee or his dependents secure an impermissible double recovery. In essence defendants contend that even if the employer is *not* negligent, his waiver of right of reimbursement must inure to the benefit of the third party tortfeasor rather than of the injured employee, and that the judgment against the third party tortfeasor must be reduced to the same extent as when the employer *is* negligent. We disagree. In our view, the compensation benefits of which the nonnegligent employer has waived reimbursement, inure to the benefit of the injured employee or his dependents, as the case may be, as payments received by them from a collateral source.

''Where a person suffers personal injury or property damage by reason of the wrongful act of another, an action against the wrongdoer for the damages suffered is not precluded nor is the amount of the damages reduced by the receipt by him of payment for his loss from a source wholly independent of the wrongdoer. [Citations.]'' (*Anheuser-Busch, Inc.* v. *Starley* (1946) 28 Cal.2d 347, 349 [170 P.2d 448, 166 A.L.R. 198]; see *City of Salinas* v. *Souza & McCue Constr. Co.* (1967) 66 Cal.2d 217, 226 [57 Cal.Rptr. 337, 424

P.2d 921]; Rest., Torts, § 920, com. (e) and Cal. annotations thereto; McCormick, Damages (1935) §§ 87, 90; Oleck, Damages to Persons and Property (1961) § 280, p. 566; 2 Witkin, Summary of Cal. Law (7th ed. 1960) Torts, § 404; Maxwell, *The Collateral Source Rule in The American Law of Damages* (1962) 46 Minn.L.Rev. 669; 7 A.L.R.3d 516 (receipt by injured person of his wages, salary or commissions from his employer); 4 A.L.R.3d 535 (receipt by injured person of statutory disability unemployment benefits); 75 A.L.R.2d 885 (receipt of public or private disability or retirement pensions); 18 A.L.R. 678 supplemented by 22 A.L.R. 1558, 95 A.L.R. 575 (compensation from another source generally).)

The foregoing principle has been applied to payments received under contracts of indemnity insurance (see *Peri* v. *Los Angeles Junction Ry. Co.* (1943) 22 Cal.2d 111, 131 [137 P.2d 441]; *Loggie* v. *Interstate Transit Co.* (1930) 108 Cal. App. 165, 169-170 [291 P. 618];[5] see *Anheuser-Busch, Inc.* v. *Starley, supra,* 28 Cal.2d 347, 349, 355 (Traynor, J., dissenting); Maxwell, *op.cit. supra,* 46 Minn.L.Rev., 669, 672 *et seq.*; 13 A.L.R.2d 355) and to payments received under workmen's compensation statutes. (See *Baroni* v. *Rosenberg* (1930) 209 Cal. 4, 6 [284 P. 1111]; *Covely* v. *C.A.B. Constr. Co.* (1952) 110 Cal.App.2d 30, 35-36 [242 P.2d 87]; *Savoia* v. *Moorehead* (1948) 83 Cal.App.2d 147 [188 P.2d 260]; *Adams* v. *Southern Pac. Co.* (1947) 82 Cal.App.2d 560, 562-564 [186 P.2d 729]; *Huber* v. *Henry J. Kaiser Co.* (1945) 71 Cal.App.2d 278, 285 [162 P.2d 693]; *Ferrario* v. *Conyes* (1937) 19 Cal.App.2d 58, 61 [64 P.2d 975]; *Amore* v. *Di Resta* (1932) 125 Cal.App. 410, 414 [13 P.2d 986]; see also, *Gersick* v. *Shilling* (1950) 97 Cal.App.2d 641, 649-650 [218 P.2d 583] (receipt of disability payments from the United States Employment Service); *Eichel* v. *New York Central R.R. Co.* (1963) 375 U.S. 253, 255 [11 L.Ed.2d 307, 309, 84 S.Ct. 316] (receipt of disability payments under Railroad Retirement Act of 1937); Maxwell, *op. cit. supra,* 46 Minn.L.Rev. 669, 694-695; 77 A.L.R.2d 1154 (prejudicial effect of the introduction of information tending to show jury that plaintiff is entitled to receive workmen's

[5]In *Loggie,* the court said: " 'Damages recoverable for a wrong are not diminished by the fact that the party injured has been wholly or partly indemnified for his loss by insurance effected by him, and to the procurement of which the wrongdoer did not contribute; and this is equally true . . . though the insurance company, by reason of having paid the loss, is entitled to be subrogated to the rights of the insured as against the tort-feasor, or to recover back from him the amount he recovers.' " (*Loggie* v. *Interstate Transit Co., supra,* 108 Cal.App. 165, 169.)

compensation benefits); 22 Am.Jur.2d, Damages, § 209, pp. 292-293.)

Accordingly, prior to *Witt* v. *Jackson, supra,* 57 Cal.2d 57, it was consistently held in California in an action by an injured employee against a third party tortfeasor, that evidence of the receipt by the former of workmen's compensation benefits was not admissible since such fact was ''extraneous to the issues.'' (*Baroni* v. *Rosenberg, supra,* 209 Cal. 4, 6; cf. *Lewis* v. *County of Contra Costa* (1955) 130 Cal.App.2d 176, 178 [278 P.2d 756] (sick leave benefits paid), *Gersick* v. *Shilling* (1950) 97 Cal.App.2d 641, 649-650 [218 P.2d 583] (medical expenses paid through private medical plan and disability payments received from the United States Employment Service).)

Our decision in *Witt* v. *Jackson, supra,* 57 Cal.2d 57, was neither a complete abrogation of the foregoing principle nor a sweeping interdict against double recovery of all kinds. Essentially we held in that case that the *negligent* employer should not profit by his own wrong and take advantage of the reimbursement remedies provided him by the Labor Code, and that ''whether an action is brought by the employer or the employee, the third party tortfeasor should be able to invoke the concurrent negligence of the employer to defeat its right of reimbursement, since, in either event, the action is brought for the benefit of the employer to the extent that compensation benefits have been paid to the employee. [Citation.]'' (*Witt* v. *Jackson, supra,* at p. 72.) To this extent, namely when the employer is *concurrently negligent,* our decision limited the prior rule declaring that the receipt of workmen's compensation benefits is extraneous to the issues and cannot be considered in reduction of the tortfeasor's damages (see *Baroni* v. *Rosenberg, supra,* 209 Cal. 4, 6 and other cases cited, *ante*).

In support of their position that plaintiffs' recovery in the instant case must be reduced, defendants fasten upon our closing observation in *Witt* that ''the injured employee may not be allowed double recovery. . . .'' (*Witt* v. *Jackson, supra,* 57 Cal.2d 57, 73.) But this language must be read in the factual context of a *concurrently negligent* employer. When so read, it is obvious that our above-quoted language is nothing more than a reference to the usual rule of law existent in negligence actions generally, that a partial satisfaction of the liability by a *joint or concurrent tortfeasor* will result in a *pro tanto* reduction of the liability of the other tort-

feasors. (Code Civ. Proc., § 877; *Laurenzi* v. *Vranizan* (1945) 25 Cal.2d 806, 813 [155 P.2d 633], citing cases; see *Ash* v. *Mortensen* (1944) 24 Cal.2d 654, 660, 662-663 [150 P.2d 876]; Rest., Torts, § 885, com. (*e*) and Cal. annotations thereto; 2 Witkin, Summary of Cal. Law, *supra,* § 390; Prosser, *Joint Torts and Several Liability* (1937) 25 Cal.L.Rev. 413, 422; see also *Anheuser-Busch, Inc.* v. *Starley, supra,* 28 Cal.2d 347, 353 (Traynor, J., dissenting).) Otherwise the injured party would be unjustly enriched. (See *Anheuser-Busch, Inc.* v. *Starley, supra,* at pp. 352, 353 (Traynor, J. dissenting); Prosser, *op.cit. supra,* 25 Cal.L.Rev. 413, 422.)

 Although since the *Witt* case the foregoing rule applies in an action brought by an employee against a negligent third party to the extent of the compensation benefits received from a *concurrently negligent* employer[6] (see, e.g., *Smith* v. *Trapp* (1967) 249 Cal.App.2d 929, 938-940 [58 Cal. Rptr. 229]; *Benwell* v. *Dean* (1967) 249 Cal.App.2d 345, 357-362 [57 Cal.Rptr. 394]; *Jones* v. *McFarland Co-op Gin, Inc.* (1965) 237 Cal.App.2d 94, 98 [46 Cal.Rptr. 572]; *Castro* v. *Fowler Equipment Co., supra,* 233 Cal.App.2d 416, 422; *Dauer* v. *Aerojet General Corp.* (1964) 224 Cal.App.2d 175, 183 [36 Cal.Rptr. 356]; *Tate* v. *Superior Court* (1963) 213 Cal.App.2d 238, 246-249 [28 Cal.Rtpr. 548]; *Chick* v. *Superior Court* (1962) 209 Cal.App.2d 201, 203 [25 Cal.Rptr. 725]; *City of Sacramento* v. *Superior Court* (1962) 205 Cal. App.2d 398, 405 [23 Cal.Rptr. 43]; Note (1962) 50 Cal.L.Rev. 571), such a rule is inapplicable in cases like the instant one here defendants do not prove the employer's concurrent negligence. (See Witkin, Cal. Evidence (2d ed. 1966) § 384.) In these latter situations, as in instances of indemnity insurance, the compensation paid is intended to benefit only the employee (§ 3201, Cal. Const., art. XX, §§ 17½, 21) and not the third party tortfeasor who does not contribute to its procurement (*Loggie* v. *Interstate Transit Co., supra,* 108 Cal. App. 165, 169, see fn. 5 *ante*), and it thus arises from a source "wholly independent of the wrongdoer." (*Anheuser-Busch, Inc.* v. *Starley, supra,* 28 Cal.2d 347, 349.)

 To summarize, since in the instant case defendants failed to prove the concurrent negligence of decedent's employer, our decision in *Witt* did not require that plaintiffs'

---

[6] However, the third party has no right of contribution against a concurrently negligent employer under Code of Civil Procedure sections 875-880. (§ 3864; *City of Sacramento* v. *Superior Court* (1962) 205 Cal. App.2d 398, 404-405 [23 Cal.Rptr. 43]; see 2 Hanna, *op. cit. supra,* § 22.03 [5].)

damages be reduced by the amount of the death benefits received. Since the employer was not negligent, the death benefits paid did not constitute an impermissible double recovery but rather a payment for plaintiffs' loss from a source wholly independent of the wrongdoer. Accordingly, the court below did not err in excluding the proffered evidence of the proceeds of plaintiffs' compromise settlement.[7]

While the waiver of subrogation rights by the employer in such a situation may inure to the benefit of the injured employee or his dependents, we are of the view that where the employer is concurrently negligent, it will not bar the assertion of such negligence so as to reduce any judgment against the third party tortfeasor by the injured employee or his dependents. Decedent's employer not being concurrently negligent, defendants cannot complain that the employer will not seek reimbursement from plaintiffs since neither plaintiffs nor the employer has profited directly or indirectly by any wrong attributable to either.

The question of the disposition of the employee's recovery from a negligent third party vis-a-vis the nonnegligent employer or his compensation insurer was a matter of concern only to those parties and not to defendants. (See *Clark* v. *Burns Hammam Baths* (1925) 71 Cal.App. 571, 575 [236 P. 152]; *Loggie* v. *Interstate Transit Co., supra,* 108 Cal.App. 165, 169; see also *Jacobsen* v. *Industrial Acc. Com., supra,* 212 Cal. 440, 447-449; *Raynor* v. *City of Arcata* (1938) 11 Cal.2d 113, 121 [77 P.2d 1054].)

We now turn to defendants' contentions that the court erred in giving two jury instructions. The first instruction reads as follows: "If you find that [decedent] was upon the defendants' truck, immediately preceding his death, in connection with the work he was there to perform, you must find

---

[7]However, such evidence may be relevant in some instances for other purposes. For example, section 3855 provides: "If the employee joins in or prosecutes such action, either the evidence of the amount of disability indemnity or death benefit paid or to be paid by the employer or the evidence of loss of earning capacity by the employee shall be admissible, but not both. Proof of all other items of damage to either the employer or employee proximately resulting from such injury or death is admissible and is part of the damages." No reliance can be placed upon the foregoing to justify the introduction of the proffered evidence of compensation benefits paid to plaintiffs herein since the evidence was offered not by *plaintiffs* for the purpose of proving damages, but by *defendants* in an attempt to reduce their liability. Moreover, plaintiffs already introduced evidence of loss of earning capacity by decedent (see *ante*), making the evidence of compensation received inadmissible under the foregoing provisions even if it would have been applicable hereto.

that the defendant's truck was a place of employment and that the defendants were an employer as those terms are elsewhere defined for you." It appears at the end of a series of instructions defining "Place of employment," "Employment," "Employer," and "Employee" (§§ 6302-6305), stating the duties of an employer to furnish a safe place of employment for employees, to provide safety devices, safeguards and methods which are reasonably adequate to render the place of employment safe and to do everything reasonably necessary to protect the life and safety of employees (§§ 6400-6403), and explaining that whether defendants were "an employer" at the time of the accident was a question of fact for the jury to decide. It was followed by an instruction on the duty of an owner of premises to workmen—invitees thereon (BAJI No. 213-G modified so as to substitute the word "vehicle" for the word "premises").

 Defendants claim that the instruction quoted above was erroneous because it failed to include the additional ingredient that decedent must have been authorized or invited by defendants to be on the equipment. At the same time defendants concede that decedent was on the truck in connection with his work.

Section 6302 defines "Place of employment" as being "any place, and the premises appurtenant thereto, where employment is carried on, . . ." Section 6303 defines "Employment" as including "the carrying on of any trade enterprise, project, industry, business, occupation or work, . . . in which any person is engaged or permitted to work for hire, except household domestic service." Section 6304 defines "Employer" as having the same meaning as in section 3300[8] and in addition thereto "every person having direction, management, control or custody of any employment, place of employment, or any employee." Section 6305 defines "Employee" as being "every person who is required or directed by any employer to engage in any employment, or to go to work or be at any time in any place of employment." These sections which are found in division 5 of the Labor Code dealing with "Safety in Employment" were originally enacted "as part of a broad legislative program . . . designed to improve the position of the working man. The legislative program was two-pronged; it sought increased safety on the job by imposing duties that were greater than those prescribed by the common

[8]Section 3300 defines "employer" in pertinent part as "Every person . . . [who] has any natural person in service."

law [citations], and, if injury occurred, it sought mitigation of hardship by a system of loss-shifting that was largely unknown under the common law. [Citation.]'' (*Alber* v. *Owens* (1967) 66 Cal.2d 790, 794 [59 Cal.Rptr. 117, 427 P.2d 781].) In line with this objective the definition in section 6304 ''is obviously intended to enlarge the meaning of 'employer' beyond its usual meaning. . . .'' (*Johnson* v. *A. Schilling & Co.* (1959) 170 Cal.App.2d 318, 322 [339 P.2d 139].)

An examination of the instant record discloses that Reid and the chemical company employee had been unloading sacks of fertilizer from the equipment and the ranch crew admittedly had been permitted on the equipment for the purpose of unloading the fertilizer. Therefore, it is an established fact that the Dale equipment was a place where ''employment'' was being ''carried on.'' (§ 6302.) There is also uncontradicted evidence that Reid had ''control'' of the Dale equipment. (§ 6304.) Therefore we conclude that the evidence established as a matter of law that the equipment was a ''Place of employment'' and that the defendants were an ''Employer.''

Since the equipment was a ''Place of employment'' and defendants were an ''Employer'' and since there was evidence that decedent was on the trailer in connection with his work, as indeed defendants here concede, the instruction was correct. Defendants' complaint that it did not include a requirement that decedent be found to have been authorized or invited to be on the trailer misses the point. Whether or not decedent was authorized or invited to be on the trailer was not determinative of the question whether the truck was a place of employment but of the question whether decedent was within the class of people for whose benefit the statutes relating to safety in employment were enacted so that defendants' violation thereof constituted actionable negligence. (See *Alber* v. *Owens, supra,* 66 Cal.2d 790, 794-795.) As we have said, there was evidence and defendants concede that decedent was on the trailer in connection with his work.

We next examine the second instruction complained of. After giving a series of instructions on negligence, contributory negligence and assumption of risk, the court instructed the jury on a general industry safety order relating to the transportation of employees on flatbed trucks. We set forth the instruction below.[9] This instruction was followed by an

[9] '' (Q). Flat-bed trucks . . . which are occasionally used for the transportation of employees shall not be put to such use unless the following conditions, when applicable, are complied with:

230

instruction that "If a party to this action violated the statute and safety order just read to you," a presumption of negligence arose which could be rebutted by evidence of excusable or justifiable conduct (BAJI No. 149 (Rev.)).

■ Defendants concede that the truck was not equipped for transporting employees but contend that it did not fall within the definition of "Flat-bed trucks . . . which are occasionally used for the transportation of employees."

■ Since "only those instructions should be given which are supported by the evidence," (*Popejoy* v. *Hannon* (1951) 37 Cal.2d 159, 167 [231 P.2d 484], we must determine whether there was any evidence in the record from which the jury properly could have deduced that the safety order was applicable to the instant case.

The instruction in issue consists of but one subdivision of an order relating to transporting employees. Some of the other subdivisions thereof apply generally to motor vehicles when being used for the transportation of employees. (Cal. Admin. Code, tit. 8, § 3413, subds. (b), (e), (i) first sentence, (k)-(p).) Others (Cal.Admin. Code, tit. 8, § 3413, subds. (a), (c), (d), (f)-(h), (i) second sentence-(j) apply only to various types of motor vehicles used *primarily* or *regularly* for the transportation of employees. Only the subdivision which is the subject of the instruction in issue (Cal.Admin. Code, tit. 8, § 3413, subd. (q)) applies to various types of trucks which are *occasionally* used for the transportation of employees. "Primarily" is defined in California Administrative Code section 3412 as meaning "that the motor vehicle is seldom used for the purpose other than the transportation of employees." (Cal.Admin. Code, tit. 8, § 3412, subd. (a).) "Regularly" is defined in that section as meaning "that the motor vehicle is used to transport employees to and from the working site and for other purposes." (Cal.Admin. Code, tit. 8, § 3412, subd. (b).) "Occasionally" is defined therein as

"(2) Flat-bed trucks shall be protected on sides and ends, and employees shall sit on the truck bed.

"*Exception:* A limit of two employees may be permitted to ride on beds that apply to the above rule, provided they stand or sit immediately behind the cab holding onto suitable grabirons which are rigidly fastened to the truck.

"(5) Employees shall not be permitted or required to ride on side rails, top of cabs, running boards, or fenders, on the hood, or with their legs hanging over the ends or sides.

"Title 8—California Administrative Code Article 23, Transportation of Employees and Materials State of California, Department of Industrial Relations, General Industry Safety Orders."

meaning "that the motor vehicle is seldom used for transportation of employees." (Cal.Admin. Code, tit. 8, § 3412, subd. (c).)

Those subdivisions which deal with vehicles *regularly* or *primarily* used for transporting employees set forth rigid standards relating to the construction or accommodation of the vehicle and the equipping thereof. The standards applicable to trucks which are *occasionally* used for transporting employees, on the other hand, are greatly relaxed, providing generally that the truck bed on which the employees ride shall be protected on the sides and ends and that the employees shall sit on the truck bed. ██ ██ Viewing the subdivision in this light and in the light of the purpose and application of the General Industry Safety Orders,[10] it is clear to us that

[10]The subject order is contained in California Administrative Code, title 8, in the subchapter entitled General Industry Safety Orders (§§ 3200-4207). Authority for the issuance of all of the safety orders contained therein is found in Labor Code section 6312, which gives the Division of Industrial Safety "the power, jurisdiction, and supervision over every employment and place of employment in this State, which is necessary adequately to enforce and administer all laws and lawful orders requiring such employment and place of employment to be safe, and requiring the protection of the life and safety of every employee in such employment or place of employment," and section 6500, which inter alia gives the division the authority to issue general orders in order to: "(a) Declare and prescribe what safety devices, safeguards, or other means or methods of protection are well adapted to render the employees of every employment and place of employment safe as required by law or lawful order"; and to "(b) Fix reasonable standards and prescribe modify, and enforce reasonable orders for the adoption, installation, use, maintenance, and operation of reasonably uniform safety devices, safeguards, and other means or methods of protection, which are necessary to carry out all laws and lawful orders relative to the protection of the life and safety of employees in employments and places of employment."

California Administrative Code section 3200 states that the General Industry Safety Orders were promulgated in order "To fulfill the expressed social policy of the State of California set forth in Article XX, Section 21 of the Constitution, to make full provision for securing safety in places of employment, . . ." (Cal. Admin. Code tit. 8, § 3200.) Section 3202 of title 8 provides: "Application of these orders. These orders establish minimum standards and apply to all employments and places of employment in California as defined in Labor Code sections 6302 and 6303; . . ."

In view of the foregoing provisions respecting the authority for the issuance of the safety orders and the purpose and application thereof, it is manifest that the General Industry Safety Orders are applicable with respect to an "Employer" as defined in Labor Code section 6304 and impose on him the duty to conform to minimum standards relative to the protection of the safety of an "Employee" in "Employment" or a "Place of employment" as those terms are defined in Labor Code sections 6302, 6303 and 6305, as provided in Labor Code, section 6318. (See *Alber* v. *Owens, supra,* 66 Cal.2d 790, 794-797.) It is also clear to us that although the term "Employee" is not defined in the General Industry Safety Orders it was intended to include those persons falling within the definition of "Employee" in Labor Code section 6305.

use of the term "occasionally" was intended only to provide lower standards for trucks which are not regularly or primarily used for transporting employees, rather than to require some prior use of the truck for such purposes as a prerequisite to the application of the standards to a situation where a truck is being used to transport employees on one occasion.

Therefore, regardless of whether the Dale equipment ever had been used previously for the transportation of employees, we must conclude that the giving of the instruction was justified if there was sufficient evidence in the record from which the jury could properly infer that defendants were an "Employer," that the Dale equipment was a "Place of employment" and that at the time of the accident the equipment was being used to transport an "Employee" as these terms are defined in the Labor Code.

As we already have explained, there was evidence establishing as a matter of law that the equipment was a "Place of employment" and that Reid, who had control of the equipment was an "Employer." Additionally, there was substantial evidence in the record from which the jury reasonably could have deduced that decedent was killed while en route from the home ranch to the Zane Grey ranch for the purpose of unloading fertilizer at the latter location as he was directed to do by his supervisor and therefore that decedent was "engaged in . . . employment." (§ 6305.) Consequently, there is ample evidence that at the time of the accident the equipment was being used to transport an "Employee."

■ Defendants' second objection to the giving of the instruction based on the safety order, namely, that they nowhere were shown to have allowed any crew member to ride on the Dale equipment, is clearly without merit. There is evidence in the record from which the jury reasonably could have inferred that Reid impliedly consented to decedent's riding on the equipment. Moreover, if the equipment was a "Place of employment" and defendants were an "Employer" then they were subject to all applicable safety orders, including the one now under consideration. A determination whether defendants had authorized or permitted decedent to ride on the truck is relevant on the issue of whether decedent was rightfully on the premises and therefore within the class of persons intended to be protected by the safety order. (See

*ante.*) It is not relevant, however, on the issue of whether defendants had a duty to comply with the safety order.

The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

Appellants' petition for a rehearing was denied September 18, 1968.