[Civ. No. 14210. Third Dist. Mar. 31, 1975.]

WILLIAM C. FULLER, Plaintiff and Appellant, v.
CAPITOL SKY PARK et al., Defendants and Respondents.

**COUNSEL**

Friedman, Collard & Kauffman and Morton Friedman for Plaintiff and Appellant.

Fitzwilliam, Memering, Stumbos & DeMers, Hardy, Erich & Brown and Norwood R. Erich for Defendants and Respondents.

**OPINION**

**PARAS, J.**—In this personal injury action, the jury returned a verdict for plaintiff. The specific contention on appeal is that the trial court erred in reducing the monetary amount of the jury verdict by an amount paid to

plaintiff as workmen's compensation. The parties have stipulated to a written agreed statement of facts for the purposes of this appeal, which we here substantially set forth hereinafter.

### AGREED FACTS

1. Plaintiff was injured in an airplane crash on July 22, 1969, while in the course and scope of his employment with Farm Air, Inc., a California corporation.

2. At the time of the injury, plaintiff's direct superior was defendant Jack Rich, who was then president of Farm Air, Inc.

3. Prior to the injury, the airplane had been inspected for defects by defendant Fred Pierini, who was then acting in the course and scope of his employment for defendant Capitol Sky Park.

4. Plaintiff sued defendant Rich on the theory that Rich evinced a reckless disregard for plaintiff's safety and a calculated and conscious willingness to permit injury or death to occur to him.[1] In the same action plaintiff also sued defendants Pierini and Capitol Sky Park on the theory of negligent inspection of the airplane.

5. Insurance Company of North America, the workmen's compensation insurer for Farm Air, Inc., filed a lien prior to trial on any prospective judgment in favor of plaintiff.

6. Prior to trial, Insurance Company of North America had paid $95,090.42 to plaintiff, representing workmen's compensation benefits.[2]

7. The jury instructions on the damage issue stated that if the jury found in favor of plaintiff, it should award the reasonable value of medical and hospital expenses, the reasonable value of working time lost, including earning capacity impairment, and pain and suffering.

---

[1] The action against Rich on the theory stated was then specifically authorized by subdivision (a)(3) of section 3601 of the Labor Code, which provided for such an action as one of the exceptions to the general rule that workmen's compensation benefits are the only remedy of an employee injured at work by another employee. This provision has since been deleted from the statute by legislation which became operative on April 1, 1972.

[2] The insurance company was not a party to the action itself, and its lien was filed as subrogee of Farm Air, Inc.

8. The jury was instructed that plaintiff had received workmen's compensation benefits, but that any verdict which he might receive should not be affected thereby; that the amount of the verdict should be determined in accordance with the court's instructions concerning damages without deducting therefrom the amount of any such compensation benefits paid to or for the plaintiff; and that the law provides a means by which the rights of the person paying such compensation benefits will be determined.

9. As to defendants Pierini and Capitol Sky Park, the jury was instructed only on the theory of ordinary negligence.

10. As to defendant Rich, the jury was instructed only on the theory of evincing a reckless disregard for the safety of plaintiff and a calculated and conscious willingness to permit injury or death to occur to him.[3]

11. The jury returned its verdict in favor of plaintiff and jointly against defendants Capitol Sky Park, Pierini, and Rich for compensatory damages in the amount of $432,000.[4]

12. The court, pursuant to stipulation of counsel, ordered the entry of judgment to be stayed pending a determination of the rights of all the litigating parties, including the lien claimant, in light of *Witt* v. *Jackson* (1961) 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641], and developments in the law since that decision.

13. After the jury trial, further proceedings were had in open court wherein appeared counsel for each of the respective parties and counsel for the lien claimant. The court on April 4, 1973, denied Insurance Company of North America's lien claim because of *Witt* v. *Jackson, supra.* The acts of defendant Rich in the scope of his employment were imputed to his employer, Farm Air, Inc., and the lien was therefore unavailable to the insurance company as a subrogee of Farm Air, Inc.

14. The court further concluded that the amount of the jury verdict $432,000, should be reduced by offsetting therefrom the sum of

---

[3]The jury was also instructed on punitive damages against Rich. It refused to award them.

[4]It is a further agreed fact that the verdict also ran against another defendant, Bob Champlain, who was one of plaintiff's fellow employees at Farm Air, Inc. Judgment notwithstanding the verdict was rendered thereafter in favor of Champlain, and there is no appeal from that judgment.

$95,090.42, the amount of workmen's compensation previously paid to plaintiff by the insurance carrier; consequently, judgment was entered on April 4, 1973, in the sum of $336,909.58, together with plaintiff's costs.

15. On July 12, 1973, defendant Rich paid plaintiff the sum of $345,841.50 in satisfaction of the judgment, costs and accrued interest, and plaintiff executed a satisfaction of judgment acknowledging such payment but expressly reserving his right to appeal the specific issue before this court.

■ Plaintiff claims that the trial court erred in reducing the jury verdict by the amount of $95,090.42. His position is that the set-off doctrine of *Witt* v. *Jackson* does not apply in favor of a third party tortfeasor (Rich) whose liability is founded not on ordinary negligence but on former subdivision (a)(3) of section 3601 of the Labor Code ("a reckless disregard for the safety" of plaintiff "and a calculated and conscious willingness to permit injury or death" to him).

We have examined the *Witt* case carefully and considered the application of its principles to the instant case, just as did the trial court. "Various provisions of the Labor Code [fn. omitted] subrogate an employer (or his workmen's compensation insurer) to the common law tort recovery of an injured employee, permitting the employer/carrier to recover its workmen's compensation outlays from a negligent third party through an independent lawsuit, or by joining the employee's lawsuit or by claiming a lien on the employee's recovery. (§§ 3852, 3853, 3854, 3856, subd. (b).) *Witt* v. *Jackson* (1961) 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641], attaches a substantive condition to the employer's recovery; holds that the employer may not recover from the third party if his own negligence has contributed to the accident; reduces the employee's recovery of third party damages by the amount of workmen's compensation payments he has received from the employer/carrier." (*Roe* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 884, 887 [117 Cal.Rptr. 683, 528 P.2d 771].)

The reason for refusing a lien for workmen's compensation benefits to a negligent employer (or his subrogee) is to prevent him from profiting by his own wrong. (*Witt* v. *Jackson, supra* at p. 72.) The reason the damages awarded the injured employee must be reduced by the amount of workmen's compensation he has received is that the employee may not be allowed double recovery for the same injury. (*Witt* v. *Jackson, supra* at p. 73.) Both reasons reflect sound legal theory and confirm the

unquestioned wisdom of the *Witt* doctrine. It is noteworthy that either way, the injured employee gets full tort compensation for his injury, just as he did before *Witt* v. *Jackson;* his total recovery is not reduced, whether the employer be at fault or not. But where the employer is found at fault, the employee simply does not collect a second time from the third party that which he has already collected once from his employer (again just as before *Witt* v. *Jackson*).

Plaintiff does not quarrel with the propriety of denying to his employer or its workmen's compensation carrier recoupment of the workmen's compensation benefits paid. Indeed, since the misconduct of Rich is imputed to his (and plaintiff's) employer Farm Air, Inc., and since such misconduct under subdivision (a)(3) of section 3601 of the Labor Code is necessarily of greater culpability than ordinary negligence, there is even stronger reason for such denial. Plaintiff instead points to the second effect of *Witt* v. *Jackson,* the credit to the third party tortfeasor; and argues that such credit is applicable only where the third party recovery is based upon ordinary negligence. Since here recovery was based upon what plaintiff characterizes as an intentional tort, he maintains that the rationale of *Witt* v. *Jackson* does not apply and plaintiff should in fact be allowed double recovery.

We disagree. First, although in *Witt* v. *Jackson* the court dealt factually with ordinary negligence of the third party, there is nothing in the opinion to suggest that its doctrine was intended by the Supreme Court to be inapplicable to other fault concepts. Second, we see no reason to corrupt such a sound legal doctrine by denying it application to an area of tort law where it logically belongs. In legal lore, actionable tort fault has taken various forms other than negligence, among which are gross negligence, recklessness, wilful misconduct, wilful and serious misconduct, wilful and wanton negligence, and intention to injure. (See Prosser, Torts, (4th ed.) §§ 3, 34.) In all such forms, regardless of the degree of culpable conduct, the damages recoverable are compensatory in character (25 C.J.S., Damages, §§ 3, 17), intended and calculated to make the injured person whole, not to reward him or enrich him over and above his loss; it is this intendment which gives rise to the principle of no double recovery. (*Ibid.,* § 3.) The compensatory damage principle dictates no double recovery, for by definition, double recovery is antithetical to compensatory damages.

The compensatory damage principle is basic to the law of damages and in California long antedated *Witt* v. *Jackson.* (*Ash* v. *Mortensen*

(1944) 24 Cal.2d 654; [150 P.2d 876]; *Laurenzi* v. *Vranizan* (1945) 25 Cal.2d 806 [155 P.2d 633]; *Estate of De Laveaga* (1958) 50 Cal.2d 480 [326 P.2d 129]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 842 et seq., p. 3137.) "Civil Code section 3333 provides . . . the measure of damages . . . . In applying this measure it must be noted that the primary object of an award of damages in a civil action, and the fundamental theory or principle on which it is based is just compensation or indemnity for the loss or injury sustained by the plaintiff *and no more.*" (*Munger* v. *Moore* (1970) 11 Cal.App.3d 1, 11 [89 Cal.Rptr. 323].) (Italics added.)

The fault concept defined in former subdivision (a)(3) of section 3601 of the Labor Code, does not stand in any more favorable light vis-a-vis the compensatory damage concept than the other forms of aggravated conduct, including intentional torts. No double recovery was or should have been permitted to plaintiff.

Plaintiff cites *Roe* v. *Workmen's Comp. Appeals Bd., supra,* in support of his contention that a double recovery should be accorded to him. The question of double recovery was only peripherally involved in *Roe.* There the injured employee filed suit against the third party tortfeasor and in due course made a settlement, *receiving the money.* The third party tort feasor did not assert *Witt* v. *Jackson;* and although the plaintiff's employer and carrier knew of the lawsuit, they ignored it. Thereafter the employee filed his application before the Workmen's Compensation Appeals Board and the carrier claimed a statutory credit under section 3852 et seq. of the Labor Code for the third party settlement. When the employee then asserted to the Appeals Board that *Witt* v. *Jackson* prevents the employer or his carrier from asserting the credit if the employer was negligent, the board declined the assertion and allowed the credit. The *Roe* court reversed, holding that the board is a proper forum in which to assert *Witt* v. *Jackson* in cases where the third party tortfeasor has foregone the credit. The board was directed to entertain the *Witt* defense to the carrier's claimed credit, and if it found the employer at fault, to disallow it; if it found him faultless to allow it.

Since the third party had either neglected or renounced a *Witt* defense and was totally out of the picture, the *Roe* court was confronted with the reality that if the *Witt* defense were allowed and if the employer was found negligent, a double recovery would result. Obviously, because of the posture of the case, one of the two principles of *Witt* v. *Jackson* had to be sacrificed, whichever way the *Roe* court ruled. With the third party

out of the picture and with the employer potentially negligent, the *Roe* court had to choose between permitting double recovery to the employee or permitting a wrong-doing employer to profit by his own wrong. The court preferred the former, and thus declared that a double recovery is not so repugnant a concept as to prohibit this preference. As between two undesirable consequences, (1) double recovery and (2) profit by one's own wrong, the *Roe* court held the latter consequence to be the more undesirable. In doing so, it expressly reaffirmed that the third party is the beneficiary of the policy against double recovery, thus making it clear that the absence of the third party was the *sine qua non* for departure from the normal rule. Though *Witt* v. *Jackson* was not "a sweeping interdict against double recovery" (*De Cruz* v. *Reid* (1968) 69 Cal.2d 217, 225 [70 Cal.Rptr. 550, 444 P.2d 342]; *Roe* v. *Workmen's Comp. Appeals Bd., supra* at p. 889), neither did *Roe* fondly embrace double recovery.

Plaintiff would have us interpret such cases as *De Cruz* v. *Reid, supra,* and *Helfend* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1 [84 Cal.Rptr. 173, 465 P.2d 61], as authority for his position. *Helfend* dealt with the "collateral source rule," to the effect that generally if an injured party plaintiff receives some compensation for his injury from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages owed by the tortfeasor. This rule embodies such compensation as payments received from medical insurance, sick leave, or the like. Upon analysis, *De Cruz* is found to have dealt with the same principle. The "collateral source" rule has nothing however to do with this case or with the propriety or legality of the trial court's action herein. The *De Cruz* case itself made this clear when it explained, clarified, and reemphasized the holding in the *Witt* case.

The only direct departure from the allowance of compensatory damages alone, in all torts, is in the area of punitive damages. There the law has determined that in certain situations unnecessary to specify here, more should be given to the injured plaintiff than solely compensation for his injury. (Civ. Code, § 3294.) In the instant case, the issue of punitive damages against Rich was submitted to the jury with appropriate instructions. The jury awarded no punitive damages, even though its finding of liability against Rich was necessarily based upon the aggravated conduct specified in former subdivision (a)(3) of section 3601 of the Labor Code. Yet plaintiff would have us award him and against Rich an additional $95,090.42 over and above the $432,000 which plaintiff has fully received (and which represents full compensation for

the injury, as assessed by the jury), for no other reason than because Rich was guilty not of simple negligence but of the proscribed aggravated conduct. What else could this be but punitive damages, which the jury expressly refused to award?

We prefer to accept the reasoning of the trial judge who at the time of his ruling on this issue said in effect that for the purposes of the application of the *Witt* rule, if the jury found defendant's acts fell within the language of subdivision (a)(3) of section 3601 of the Labor Code, the finding would be akin to a finding of a form of gross negligence, and that a fortiori this encompassed negligence, which is sufficient for the application of the full scope of the *Witt* rule. (See *Brown* v. *Superior Court* (1970) 3 Cal.3d 427, 430 [90 Cal.Rptr. 737, 476 P.2d 105]; *Ogdon* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 192, 205 [113 Cal.Rptr. 206, 520 P.2d 1022]; *McQuillan* v. *Southern Pacific Co.* (1974) 40 Cal.App.3d 802, 805-808 [115 Cal.Rptr. 418].) We agree and affirm the judgment.

Friedman, Acting P. J., and Regan, J., concurred.

A petition for a rehearing was denied April 25, 1975, and appellant's petition for a hearing by the Supreme Court was denied June 26, 1975.